## Turchanik v. Plymouth Township

*George B. Ritchie,* for plaintiff.
*Stephen B. Killian,* for plaintiff-intervenors.
*Arthur L. Piccone,* for defendants.
*Martin J. Meyer* and *James P. Blaum,* for defendant-intervenor.

PODCASY, *J.,* September 29, 1977 — The central issue before us in these proceedings is whether the supervisors of a second class township have power to enact an ordinance granting an exclusive cable television franchise within the township to a given applicant to the exclusion of all other applicants.

Henry Turchanik, original plaintiff herein, trading as Shawnee TV Cable, has been providing cable TV service to a substantial number of customers in Plymouth Township since the fall of 1963, and Tilbury Knob, Inc., corporate-plaintiff-intervenor, has also been providing cable TV service to a substantial number of customers residing in the Tilbury Knob section of Plymouth Township since approximately 1955. Individual plaintiff-intervenors are seven of the present customers of Tilbury Knob, Inc.

Both Turchanik and Tilbury Knob, Inc. have invested large sums of money in initial installation of their respective systems and in subsequent maintenance thereof. Both Turchanik and Tilbury Knob, Inc. have encountered customer complaints from time to time, the former as to service and the latter as to charges, but a very substantial majority of their long-term customers appear satisfied with both service and charges, and wish to continue as customers as heretofore. Both Turchanik and Tilbury Knob, Inc. have provided cable service covering only local channels, but Turchanik has since late 1976, and early 1977, been involved in expansion of his system so as to provide reception of certain out-of-town channels.

Edward Gronka, defendant-intervenor, trading as Tilbury Cable Company, acting on his own account, has entered the cable TV picture in Plymouth Township very recently. He is a resident of the Tilbury Knob section of Plymouth Township, and had managed Tilbury Knob, Inc. (a nonprofit corporation) for a number of years. In 1976, he sought to obtain an exclusive cable TV franchise in Plymouth Township and, by a two-to-one vote, the township supervisors adopted an ordinance on April 4, 1977, purporting to grant to his firm, Tilbury Cable Company (and its assigns), "the exclusive right and privilege to construct, erect, install, maintain, improve, expand, and operate" a cable television system within the township for fifteen years, with an option to renew said franchise thereafter for an additional ten years, subject to certain conditions aimed at providing "due process." This same ordinance purports to repeal all prior "official actions" of the township board of supervisors inconsistent therewith, and requires Gronka to carry substantial public liability insurance, to provide

48-hour repair service, and to adopt with the township a coordinated program for the resolution of subscriber complaints. In addition, the township reserves the right to regulate rates and is to be paid a franchise fee equal to one percent of gross subscriber revenues.

The aforesaid ordinance was passed against the advice of the solicitor of Plymouth Township to the effect that the township lacked power to grant such an exclusive franchise, and despite presentation to the board of supervisors of a petition signed by 170 residents of the township opposing its passage. The ordinance was drafted, prior to its adoption, by counsel for Edward Gronka, defendant-intervenor. It purported to repeal, inter alia, a 1963 resolution by the board of supervisors granting permission to Henry Turchanik, plaintiff, the right to install a cable TV system in the township, utilizing Bell Telephone Company poles for that purpose. In installing his cable TV system following passage of said resolution, Turchanik has in fact used both Bell and UGI poles, together with poles owned jointly by Bell and UGI, and has paid each company proportionately for such use.

Defendants contend that we should construe the 1977 ordinance as granting an exclusive franchise to defendant Gronka solely for purposes of expansion of existing cable TV facilities. We find it impossible to adopt such a construction, inasmuch as the language of the ordinance clearly and explicitly refers to maintenance and operation of a cable TV system as well as to expansion thereof. The supervisors were requested to amend the wording of the ordinance prior to its adoption so as to allow plaintiffs to continue in business and refused to do so. Under such circumstances we must construe the

ordinance precisely as it reads, and as it reads it purports to grant a wholly exclusive cable TV franchise to defendant Gronka. The usual meaning of the word "exclusive" is "sole, undivided, and possessed to the exclusion of others," and it is our duty to construe the language of the 1977 ordinance in accordance with such common and approved usage: Harris-Walsh, Inc. v. Dickson City Boro., 420 Pa. 259, 216 A. 2d 329 (1966).

Having adopted this construction of the 1977 ordinance, we are compelled to determine whether the supervisors of a second class township have power to grant such a wholly exclusive franchise. We conclude that such power does not exist, and that the ordinance is invalid.

It has long been settled law that second class townships have only such powers as are expressly granted by statute or as arise from such express grants by necessary implication: Com. v. Hanzlik, 400 Pa. 134, 161 A. 2d 340 (1960); St. Joseph Lead Company et al. v. Potter Township, 398 Pa. 361, 157 A. 2d 638 (1959). Our legislature has not seen fit to grant vast and extensive police powers to second class townships, and we must therefore search for an express grant of a specific power in passing upon the validity of the ordinance here in question: Com. v. Ashenfelder, 413 Pa. 517, 198 A. 2d 514 (1964). Furthermore, it is a well established principle of law that an ordinance purporting to exercise the police power must not be unreasonable, unduly oppressive, or patently beyond the necessity of the case, and that supervisors of a second class township may not, under guise of exercising the police power, arbitrarily interfere with the conduct of private business: Gambone v. Com., 375 Pa. 547, 101 A. 2d 634 (1954); New Hanover Twp. v. Young, 30 D. & C. 2d 663 (1962).

All corporate powers of a second class township exist only by virtue of the provisions of The Second Class Township Code of May 1, 1933, P.L. 103, as amended, 53 P.S. §65101 et seq.; Com. ex rel. Twp. of Ayr v. Fulk, 10 Adams 1 (1968).

The only use of the word "franchise" which we have been able to locate in The Second Class Township Code is in article II, section 215, in which it is stated that "[a]fter the consolidation of two or more townships, the rights, privileges and franchises of each of the townships . . . shall be vested in the new township." Black's Law Dictionary defines a "franchise" as "a special privilege" of a public nature exercisable only by virture of a legislative grant. We cannot accept the proposition urged upon us by defendants' counsel that the reference to the "rights, privileges and franchises" of second class townships in article II, sec. 215, of the code constitutes a recognition of the power of second class townships to grant franchises to private individuals or corporations. We interpret that reference to pertain instead to those special privileges of a public nature which have been granted by the legislature to second class townships as such, either expressly or by necessary implication.

Defendants contend that article VII, sec. 702, clause XXVI, 53 P.S. §65726 and XXXVIII §65738, and article XI, sec. 1101 et seq., 53 P.S. §66101 et seq., of The Second Class Township Code grant second class townships the authority to control and regulate their streets, highways, sidewalks, and foothpaths, and that from this grant there arises by necessary implication the right to control and regulate the use of utility poles by cable TV companies. In fact we find the legislative grant of power rather restrictive. Article VII, sec. 702, clause XXVI, 53

P.S. §65726, simply authorizes the prohibition of any obstruction to the convenient use of roadways and foothpaths. Article VII, sec. 702, clause XXXVIII, 53 P.S. §65738, simply authorizes the expenditure of money for the construction and maintenance of sidewalks and footpaths. We fail to see the bearing on these clauses on the question of the propriety of granting cable TV franchises. Article XI, sec. 1101, 53 P.S. §66101, pertains to the surveying, laying out, opening, widening, straightening, vacating, and relaying of township roads and for the widening, straightening, or improvement of state highways, and here again we fail to see its bearing on the matter of cable TV franchises. Nor do we feel that the general power to enact ordinances necessary for the "health, cleanliness, comfort, and safety" of the citizenry set forth in article VII, sec. 702, clause XXIX of the code, 53 P.S. §65729, carries with it by necessary implication the power to grant cable TV franchises, exclusive or otherwise. Whatever the powers of cities or boroughs may be, we are dealing here solely with the question of the powers of second class townships, and cases involving cities or boroughs are not controlling on the issue before us.

Article XI, sec. 1156, of The Second Class Township Code, 53 P.S. §66156, as amended by the Act of March 1, 1974, P.L. 88, dealing with the subject of permits, provides that no telephone, telegraph, or electric light or power poles shall be erected upon or in any portion of a township road except under such conditions, restrictions, and regulations relating to installation and maintenance as may be prescribed in permits granted by the township for such purpose, subject to payment to the township of a fee as determined by the Pennsylvania Department of

Transportation sufficient to cover the cost of pro-
cessing the application for such a permit plus an
additional fee sufficient to cover the reasonable
cost of initial inspection of such poles following
installation. If any of the prescribed conditions, re-
strictions, and regulations relating to installation
and maintenance of such poles are not complied
with, the township supervisors may order com-
pliance and, if the order is not thereafter obeyed
within 60 days, the supervisors are empowered to
do the necessary work and to collect from the per-
mittee the cost thereof plus 20 percent. Article XI,
sec. 1156, also grants similar powers in reference to
any "electric conduits" laid "upon or in" a township
road, but no specific reference is made to electric
conduits or other wiring suspended between tele-
phone and electric power poles. Section 1156, in its
final paragraph, states specifically that "nothing in
this section shall be construed to authorize or em-
power a township to regulate or control the opera-
tions of any permittee except as provided for in this
section."

In view of the statutory admonition set forth
above, we are forced to conclude that any indi-
vidual or organization is free to install and main-
tain cable TV wiring suspended between telephone
and electric power poles, with the permission of the
owners of the poles and upon payments of agreed
rental therefor, without the necessity of obtaining
any prior permit from the second class township
within which such poles are located, subject only to
such control as may be exercised by the Common-
wealth and/or the Federal Government. Thus far
the Commonwealth has not seen fit to regulate
such matters and it is apparent that plaintiffs have
obtained the necessary certificates of compliance

from the Federal Communications Commission.

Defendants contend that plaintiff Turchanik does not come before this court with clean hands because of having sought permission from the Jackson Township supervisors to install cable TV facilities in that township, because of having utilized both Bell and UGI poles rather than Bell poles alone, and because of having undertaken expansion of facilities within Plymouth Township without township permission. Inasmuch as it is our conclusion that township permission is not required, the second and third reasons given for application of the "clean hands" doctrine have no merit, and we are not inclined to penalize plaintiff Turchanik for having earlier sought permission to operate in another township as a precautionary matter and as a matter of good public relations, even if such permission is not required.

We find our opinion in this matter to be identical with the opinion of the office of the Attorney General of the Commonwealth of Pennsylvania, as set forth in memorandum Opinion of the Federal Communications Commission released July 25, 1974, in the matter of the applications of Armstrong Utilities, Inc. for Certificates of Compliance CAC 923-926, 47 F.C.C. 2d 977.

In light of the foregoing, we find no necessity to deal with the constitutional issues raised in oral argument and in the several argument briefs submitted, and we do hereby enter the following decree nisi.

## DECREE

It is hereby ordered, adjudged and decreed nisi as follows:

(1) Plymouth Township Ordinance no. 3 adopted April 4, 1977, is declared null and void; and

(2) The temporary injunction heretofore entered is made permanent.

The prothonotary of Luzerne County is hereby directed to notify counsel for all parties of the date of filing of this adjudication and decree nisi, advising them that exceptions may be filed within 20 days after said notice of filing, that all matters not covered by exceptions shall be waived, and that, if no exceptions are filed within said 20 day period, the decree nisi shall be entered by the prothonotary, upon praecipe, as a final decree in this matter.