## Mount Pleasant Township v.
## Astro Cablevision Corp.

*George B. Stegenga*, for plaintiff.
*Paul H. Titus*, for defendant.
*Robert H. Griswold*, for Pa. Cable Television Association.

RODGERS, *J.*, November 5, 1981—Plaintiff, Mount Pleasant Township, a second class township in the County of Washington, seeks injunctive relief against defendant, Astro Cablevision Corporation, a business corporation with offices in the Borough of Canonsburg, Washington County, to prohibit defendant from continuing with the construction of cable television facilities in the township in the absence of a franchise from the township.

The issue to be determined is whether a second class township such as plaintiff has authority to franchise such cable television services.

For reasons stated, the court concludes that the township does have such authority, and grants the injunctive relief requested.

About the summer of 1980, Patrick McCall, an employee of New Channels Corporation, which manages Astro Cablevision, called Mr. Lee Robinson, chairman of the board of supervisors of plaintiff township, expressing an interest in serving the Mount Pleasant community. About November of 1980, Hickory Woodrow Telephone Company, a local telephone company located in Mount Pleasant Township, also, expressed an interest in providing cable television service.

Mr. McCall again talked to Mr. Robinson by telephone about December of 1980, and Mr. Robinson, at that time, informed Mr. McCall of the interest of Hickory Woodrow Telephone Company.

Mount Pleasant Township is located in the north central area of Washington County, contains about 36 square miles, a population of about 3600, about 1000 homes, and about 80 miles of streets and highways. It is rural in nature, but with four villages, Primrose, Hickory, Westland and Southview more heavily populated.

In the initial conversation with Mr. Robinson, Mr. McCall indicated that they would service only the four village areas, but in the later conversation in December indicated that facilities could be extended from the primary service area on the basis of rates to be negotiated.

Representatives of defendant, including Mr. McCall, met with Mr. Robinson and another township supervisor in early March of 1981, and at that time defendant indicated it believed the local telephone company was taking unfair advantage of information it had received from defendant, and that, while defendant usually preferred to proceed

with a franchise, it would now have to give consideration to proceeding without a franchise from the township.

Sometime before May 28, 1981, Earth Stations of Pennsylvania, a cable television corporation, expressed an interest in servicing Mount Pleasant Township, and made a formal presentation at a township meeting on May 28, 1981. Earth Stations proposed a minimum 40 channel system in three tiers, with a basic charge of $6.95 per month for tier one, and an additional charge of $3.95 per month for tier two, and $8.95 per month for tier three (home boxoffice). Earth Stations proposed to service all areas of the township, having a minimum population of ten homes per mile of highway. A representative of defendant, Astro Cablevision, was present at the meeting, but made no presentation. The township supervisors gave defendant an opportunity to make a presentation at a meeting to be held on June 14, 1981.

However, it later appeared that, at the time of the township meeting on May 28, 1981, defendant corporation had already commenced construction of cable facilities in the township, contending that the township had no authority to require its permission for the installation of such facilities. The cost of installing the cable ranges from $7,000 to $10,000, per mile. The cost of construction of head end facilities, including a tower with a receiving antenna for local television stations, parabolic antennas for satellite transmission, amplifiers and associated equipment exceeds $100,000. The court finds that two competing cable television systems are not economically feasible in the township, and could only be profitable for a system having a majority of the subscribers in the four populated areas.

Television reception by viewers in the township by standard microwave transmission from local stations is not good, except in the Hickory area.

On June 19, 1981, at a meeting of the township board of supervisors, a non-exclusive franchise was unanimously awarded by motion, to Earth Stations. Earth Stations also has the cable television franchise in the adjoining borough of Midway.

On June 30, 1981, after preliminary hearing, this court issued a preliminary injunction, restraining defendant from further construction, erection or installation of any cable television system in the township.

Defendant, Astro Cablevision, contends that a second class township in Pennsylvania has only such powers as expressly authorized by the Legislature, and that no express grant of authority has been given to second class townships to regulate the cable television business.

"No one has suggested that Townships of the Second Class, or other municipalities for that matter, have implied powers generally to permit or exclude the conduct within their boundaries of business enterprises be they hardware stores, grocery stores, or cable television systems. There is in none of the municipal codes any expressed grant of authority over cable television systems or the rendering of cable television service. Authority has been found to lie in the fact that certain municipalities have such control over the use of public ways that they may, by franchise, grant a unique privilege to occupy the streets and highways such as by cable television lines and apparatus." Brief of Pennsylvania Cable Television Association, Amicus Curiae, p. 6.

In the case of the Borough of Scottdale v. National Cable Television Corporation, 476 Pa. 47, 381 A. 2d 859 (1977) at 862 this appears:

" . . . the claim of the Company is that it is in the class of 'a butcher, baker or candlestick maker' so that its charges could not be publicly regulated."

Defendant's claim, in this respect, echoes the language of the court in Greater Fremont, Inc. v. Fremont, 302 F. Supp. 652 (1968) (D.C.Ohio), quoted in the Annotation, Validity and Construction of Municipal Ordinances Regulating Community Antenna Television service, 41 ALR 3d, at 397:

"The court then directed its attention to whether the ordinances could be sustained under the general state constitutional grant of power permitting cities to control and regulate public utilities supplying services or products to the city. The court said that the essential characteristics of a public utility are that the public has a great interest and need to receive the services of the corporation, and that for reasons of practical necessity, the operation of this type of business must occupy a monopolistic or ologopolistic position in the market. Saying that the first of these two characteristics clearly was not present, the court stated that '[t]he public has about as much need for the service of CATV system as it does for hand carved ivory backscratchers,' and thus that even if the CATV system was in fact the only one in the market, it was not a monopoly in the economic sense, and therefore was not a public utility."

This view, however, is not in accord with the opinion of the Supreme Court of Pennsylvania in the Scottdale case, 381 A. 2d 859, at 862:

"Cable television companies are or tend to be monopolies, have large capital investment, purport to provide their services to the public and make use of consent, license or franchise to use public ways as an important aspect of their businesses.[7] There

is no closed category of business activities affected with public interest which can be subjected to regulation as public utilities.[8] But for the local exercise of control over charges there is no rate protection for the benefit of the consumer exercised by the federal government or by the Commonwealth. Accordingly, the constitutional argument by the appellant has no sound basis."

The parties agree that neither the Pennsylvania Public Utility Commission, nor the Federal Communications Commission regulate the rates, locations or other matters connected with cable televisions systems, and that, if the township has no authority to regulate rates, there is no legal limit on the rates charged.

However, the parties do not dispute that current rules of the Federal Communications Commission set a ceiling on the franchise charges by a municipality of three percent of the company's annual gross revenues, which may be raised to five percent with a special FCC waiver; and that, while municipal governments in some areas may control basic cable rates, they do not have the right to control prices for pay services such as home boxoffice.

Plaintiff township relies on the authority of the Borough of Scottdale case supra, and a decision of Judge Earley, Relm Corporation v. The Borough of Indiana and The Township of White, in the Court of Common Pleas of Indiana County, Pennsylvania, no. 301 CD, 1981. (July, 1981)

In the Borough of Scottdale case, the court relied in part on Section 1202 (17), 53 P.S. §46202 (17) of the Borough Code conferring the specific power on the borough to regulate the streets, and upon Section 1202 (74), 53 P.S. §46202, giving the borough the power:

"To make and adopt all such ordinances, . . . as

may be expedient or necessary for the proper management, care and control of the borough and its finances, and the maintenance of peace, good government, safety and welfare of the borough and its trade, commerce and manufactures."

Judge Earley found no significant difference between the powers granted in the Borough Code and the power of a second class township to regulate its streets as set forth in the Second Class Township Code, 53 P.S. 66101, et seq., and the general power granted to second class townships, 53 P.S. 65762:

"To make and adopt all such ordinances . . . as may be deemed expedient or necessary for the proper management, care and control of the township and its finances and the maintenance of peace, good government and welfare of the township and its trade, commerce and manufactures."

However, defendant relies on two cases, Lower Nazareth Township v. Service Electric Cable T.V., Inc., 43 Northhampton 112 (1977) and Turchanik v. Plymouth Township, 5 Pa. D. & C. 3d, 381, Luzerne (1977).

In the Lower Nazareth case, Judge Grifo found that while Section 1202 (17) of the Borough Code specifically provided for the regulation of streets, there was no similar regulatory provision in the Second Class Township Code.

In the Turchanik case, Judge Podcasy failed to see any relevance to the question of granting cable TV franchises and those provisions of the code authorizing the opening of township roads and the prohibition to obstructions for the convenient use of roadways and footpaths.

Defendant relies heavily on the language of Section 1156 of the Second Class Township Code, 53 P.S. §66156:

"No railroad or street railway shall hereafter be constructed upon any township road, nor shall any railroad or street railway crossings, nor any gas pipe, water pipe, electric conduits, or other piping, be laid upon or in, nor shall any telephone, telegraph, or electric light or power poles, or any coal tipples or any other obstructions be erected upon or in, any portion of a township road except under such conditions, restrictions and regulations relating to the installation and maintenance thereof, as may be prescribed in permits granted by the township for such purpose. Each application shall be submitted to the township, in duplicate, or such larger number as the township may require. The township shall prescribe a fee as determined by the Department of Transportation payable to the township not exceeding the approximate reasonable cost of processing the application, and another fee payable to the township not exceeding the approximate reasonable cost of making the first inspection hereafter described. Each application shall be accompanied by both fees. When the township shall grant the permit applied for, the township supervisors shall inspect the work authorized by the permit upon the completion thereof, and when necessary, enforce compliance with the conditions, restrictions and regulations prescribed by the township. . . . Nothing in this section shall be construed to require a permit in advance for emergency repairs necessary for the safety of the public or the restoration or continuance of public utility or other public service, but application for such permit and the fees shall be submitted as herein prescribed within five days after completion of the work, and thereafter the remaining provisions of this section shall apply. Further nothing in this section shall be construed to authorize or empower a township to regulate or control the opera-

tions of any permittee, except as provided for in this section."

This section is repealed, insofar as it is inconsistent with the regulations of the Public Utility Commission over public utilities: 15 P.S. §1822; See Duquesne Light Company v. Monroeville Borough, 449 Pa. 573, 298 A. 2d 252 (1972).

Defendant argues this section expressly limits the conditions under which the township may issue permits to utilities using its roads; and, further, that the express language of this particular section rules out any reliance on the general powers granted the township to legislate for the welfare of the township and its trade and commerce. However, the Public Utility Commission has found that cable television systems are not utilities. This court finds that section 1156 does not include cable television systems as permittees.

Moreover, neither the Lower Nazareth nor the Turchanik cases referred to the Supreme Court's opinion in the case of the Borough of Scottdale supra. In that case, the court said this: 381 A. 2d at 861, et seq.

"As to the legality of municipal control in Pennsylvania over charges by cable television governmental unit with respect to the use of public places, including streets, roads and highways. It is conceded that Pennsylvania municipalities do have the power and authority to grant permission for the use of public ways. Forty-six South Fifty-second Street Corporation v. Manlin, 398 Pa. 304, 157 A. 2d 381 (1960). In City of Farrell v. Altoona CATV, 419 Pa. 391, 214 A. 2d 231 (1965), this power was held so important that the municipality could exercise it only by ordinance and not by the informality of a resolution. The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, No. 581

§1202, 53 P.S. §46202, by subdivision (17), specifically confers the power to regulate the use of public ways. Significantly, subdivision (74) grants the very broad power to adopt ordinances so long as they are 'not inconsistent with or restrained by the Constitution and laws of this Commonwealth . . . '

. . . The alleged lack of regulatory authority can be met by the express broad authority conferred by the Borough Code provisions already referred to. Even if the authority were not express, it could be implied from the admitted grant of authority with respect to the use of public ways.

. . . Courts in other jurisdictions, depending upon local law, have upheld and have denied the assertion of municipal power with respect to the charges of cable television companies. Unless and until there is a valid preemptive control over such charges by the federal government or by the Commonwealth, we conclude that Pennsylvania *municipalities* have the legal authority to control the charges made by cable television companies. We do not have before us nor do we pass upon the issue of whether the exercise of control in this case was unreasonable or an abuse of discretion." (Emphasis added.)

Defendant's argument that it should be treated as any other private business, and that a second class township has been given no authority to regulate its business activities is a two-edged sword. It fails to take into account the property rights of land owners abutting a public highway. In the case of 46 South 52nd Street Corporation v. Manlin, 398 Pa. 304 157 A. 2d 381 (1960), the Supreme Court held that since defendant did not have permission to maintain a newsstand, either from the City of Philadelphia, or from the abutting fee owner, the maintenance of the newsstand was a trespass upon the owner's property and should be enjoined.

The court said this at (398 Pa. 311)

"The plaintiffs' contention is that since it is the owner of the title, and since property taken by eminent domain passes only to the extent reasonably required for the purpose for which the power of eminent domain is exercised, . . . and since the sovereign acquires by condemnation only those rights for which it pays, . . . the sidewalk may be used only for a public as distinguished from a private use. No private use may be made of the sidewalk in opposition to or over the objection of plaintiffs as owners. Their private right is superior to any other private right. It is conceded that the plaintiffs have title to the center of the street, . . . subject only to an easement of public use.

While the easement acquired by the public in country roads is an easement of passage only, this is not true in Pennsylvania with respect to the public right in the streets of a city. These are regarded as in the exclusive possession of the municipality, which may authorize the use of the sidewalk, as well as the street, for *any public service*, without further compensation to the abutting lot owners. . . . Pursuant to the city's control, the sidewalks in Philadelphia have been utilized without the consent of the abutting property owners for a wide variety of public purposes, all of which are identified with a public service. Certainly it could not be successfully asserted by an abutting property owner that unless he is paid rent or otherwise consents to such uses of the sidewalk, he is entitled to bar them." (Citations omitted.)

In the case of Trans-Video Corporation v. Borough of Minersville, 56 Schuylkill 149 at 156 (1958), the court said this:

"The mere fact that plaintiff's business is of such a nature as to require the occupation of the public

streets with its wires and cables, gives it no right to do so without the consent of the Commonwealth or the Commonwealth's duly delegated agents. 'It is well settled that no person, corporation or individual has the right to make a special or exceptional use of a public highway not common to all citizens except by grant from the sovereign power.' "

The power of a city to authorize the use of its streets and sidewalks, without the consent of abutting property owners, for a public purpose was extended to townships in the case of Pittsburgh National Bank v. Equitable Gas Company, 421 Pa. 468, 220 A. 2d 12 (1966), eliminating the distinction between country and city roads.

In the case of RKO-Stanley Warner Theatres, Inc. v. Mellon National Bank and Trust Company, 436 F. 2d, 1297 (1970) (Third Circuit), Mellon proposed to construct a building on property formerly constituting a public sidewalk, which had been vacated by the city. Such construction would prevent the plaintiff from going on the former sidewalk area to service and maintain signs on its marquee. Plaintiff contended it had acquired an easement by prescription. Upholding this contention, the court said:

"Recent Pennsylvania decisions have expanded the scope of the public easement, holding that exclusive possession of the municipality, which may authorize the use of any public sidewalk for any public purpose. But in order to fall within this expanded scope of the public easement, a use must be specifically authorized by the municipality; and such authorization 'must be by legislative grant in clear words or by unavoidable implication.'

While the public's lawful use of a sidewalk is restricted to uses within the scope of the public easement, the abutting fee owner is not so re-

stricted in his use of the sidewalk. The abutting owner has the right to use the sidewalk in any manner not inconsistent with the public easement. He also has the right to use a portion of the sidewalk in a reasonable manner for a temporary period, and this right is not subservient to the right of the traveling public.

No use outside the scope of the public easement may be made of a sidewalk in opposition to or over the objection of the abutting fee owner. The abutting fee owner's private right is superior to any other private right, and any private use of a sidewalk constitutes a trespassory invasion of the property rights of the abutting fee owner. The Pennsylvania decisions have long made clear that the abutting owner can prevent such uses of the public way."

It is clear from the foregoing discussion, that if indeed defendant is in the same category as a hardware store, or a grocery store, and that its business is not affected with a public purpose, or the rendering of a public service, then it has no right to trespass on the land of the abutting property owners. In the case of Hindin v. Samuel, 158 Pa. Superior Ct. 539, 45 A. 2d 370 (1946), the court said, at 542:

"The sale of food upon the public highways or streets by private individuals for their own purposes and profits is not a public use or a public function of those streets or highways and a property owner or lessee may object and decline to have his property used for the business enterprise of other people."

In the Borough of Scottdale case, our Supreme Court held that the municipality may determine that the operation of a cable TV system affects the public interest and is subject to regulation.

In the case at bar, many areas of the township suffer from poor television reception from existing facilities. The proposal, tentatively approved by the township is to provide a forty (40) channel system, which includes the major networks, local television stations, public television telecasts, cable network news, the House of Representatives, Christian entertainment, black entertainment and home box-office, among others.

Television, including cable TV systems, is a major media of public communication and information.

It is not unreasonable to conclude that until such time as the federal government, or the Commonwealth of Pennsylvania preempt the field, the elected officials of the municipality of Mount Pleasant Township have the right and duty to determine whether the operation of a cable television system should be permitted on its highways and to determine the rates, services and facilities that should be provided, in the exercise of a reasonable discretion.

## DECREE NISI

And now, November 5, 1981, defendant, Astro Cablevision, a corporation, its agents, servants, and employees are restrained and prohibited from the construction, erection, installation or operation of any cable television system equipment or devices, including cables, poles, wires, house conduits and any other construction or operation of a cable television system in Mount Pleasant Township, unless duly authorized by proper legal action of plaintiff township.

If no exceptions are filed within ten days after notice of the filing of this adjudication, the decree nisi shall be entered by the prothonotary upon praecipe as the final decree.