Board of Supervisors of New Britain Township *v.* Bucks County Cablevision. New Britain Township, Appellant.

Argued December 11, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

George M. Bush, for appellant.

Brad M. Jackman, Jackman and Dixon, for appellee.

Thomas L. Wenger, with him, Karen Parenti Gunnison, for Amicus Curiae, Pennsylvania State Association of Township Supervisors.

Robert H. Griswold, McNees, Wallace & Nurick, for Amicus Curiae, Pennsylvania Cable Television Association.

OPINION BY JUDGE BARRY, May 14, 1985:

This appeal results from an order of the Bucks County Court of Common Pleas which sustained preliminary objections filed by Bucks County Cablevision (Cablevision), appellee, and dismissed the complaint filed by the Board of Supervisors of New Britain Township (Board of Supervisors).

The Board of Supervisors, on behalf of New Britain Township, a township of the second class, entered into an exclusive contract with Home-Vue Cable for the delivery of cable television to its residents. Cablevision subsequently sought to install its equipment in various sections of New Britain and to sell its services to some of the residents. The Board of Supervisors instituted an action to enjoin Cablevision from

doing so to which Cablevision filed preliminary objections before the trial court.

The issue before the trial court was whether a second class township may enter into an exclusive contract for the installation and delivery of cable television service to its residents. The trial court determined that second class townships have neither the express or implied authority to regulate the franchising of cable television. It, therefore, sustained Cablevision's preliminary objections and dismissed the Board of Supervisors' complaint. The Board of Supervisors initiated this appeal.

We are mindful that our review is limited to whether the trial court committed an error of law or a manifest abuse of discretion. *Rush v. Airport Commercial Properties, Inc.*, 28 Pa. Commonwealth Ct. 51, 367 A.2d 370 (1976). In exercising our review function two sections of the Second Class Township Code, Act of May 1, 1983, P.L. 103, *as amended,* added by the Act of August 27, 1963, P.L. 1280, 53 P.S. §§65101-67201, are relevant. Under the general powers section provisions, Section 702 of the Second Class Township Code, a second class township has the authority:

To make and adopt all such ordinances, bylaws, rules and regulations not inconsistent with or restrained by the Constitution and laws of this Commonwealth as may be deemed expedient or necessary for the proper management, care and control of the township and its finances and the maintenance of peace, good government and welfare of the township and its trade, commerce and manufactures. No ordinance, by-law, rule or regulation shall be adopted which in any manner restricts, interferes with, hinders or affects the operation of any other political subdivision or instrumentality of the Commonwealth of Pennsylvania.

53 P.S. §65762. Section 1156 of the Second Class Township Code, regarding the issuance of permits provides:

No railroad or street railway shall hereafter be constructed upon any township road, nor shall any railroad or street railway crossings, nor any gas pipe, water pipe, electric conduits, or other piping, be laid upon or in, nor shall any telephone, telegraph, or electric light or power poles, or any coal tipples or any other obstructions be erected upon or in, any portion of a township road except under such conditions, restrictions and regulations relating to the installation and maintenance thereof, as may be prescribed in permits granted by the township for such purpose. . . . When the township shall grant the permit applied for, the township supervisors shall inspect the work authorized by the permit upon the completion thereof, and when necessary, enforce compliance with the conditions, restrictions and regulations prescribed by the township. In addition to such inspection, the township supervisors may reinspect the work not more than two years after its completion, and if any settlement of the road surface or other defect shall appear in the work contrary to the conditions, restrictions and regulations of the township, it may enforce compliance therewith. If the applicant shall fail to rectify any such settlement or other defect, within sixty days after written notice from the township supervisors to do so, the township supervisors may do the work and impose upon the applicant the cost thereof, together with an additional twenty percentum (20%) of such cost, which may be recovered by an action in assumpsit in the court of common pleas of the county.

All fees received by the township shall be paid into the township treasury. . . . Further, nothing in this section shall be construed to authorize or empower a township to regulate or control the operations of any permittee, except as provided for in this section.

53 P.S. §66156.

Equally significant to disposition of this appeal is the interpretation and application of *Scottdale v. National Cable Television Corporation,* 476 Pa. 47, 381 A.2d 859 (1977), in which a borough sought to enjoin a cable television company from increasing its rates for cable services without the prior approval of the borough. The borough had enacted an ordinance which prohibited the cable television company from increasing its service charges to community residents. The trial court granted the injunction and, on appeal, we affirmed as did the Supreme Court. The issue involved the legal authority by which a borough could control the charges by the cable television companies within the borough. Relying *primarily* on the general powers provision, Section 1202(74) of the Borough Code,[1] which confers express broad authority to a borough, the Supreme Court determined that a borough could regulate cable television charges. Had this power not been express, it stated, then the authority could be implied by the grant of authority to use the public roadways under Section 1202(17) of the Bor-

[1] Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §46202(74). This provision provides, as follows:

(74) General powers. To make and adopt all such ordinances, bylaws, rules and regulations not inconsistent with or restrained by the Constitution and laws of this Commonwealth, as may be expedient or necessary for the proper management, care and control of the borough and its finances, and the maintenance of peace, good government, safety and welfare of the borough and its trade, commerce and manufactures.

ough Code.[2] The Supreme Court found further support for the validity of the propriety of conditions imposed upon the use of public roadways in the broad contractual powers conferred to a borough under Section 1401 of the Borough Code.[3] It stated not that boroughs but that Pennsylvania *municipalities* have the legal authority to control service charges devised by the cable television companies.

In the present case, the trial court, in an excellent, well-reasoned opinion by Judge GARB, determined that *Scottdale* applied only to boroughs and not to second class townships. It reasoned that, although the general powers provisions of the Borough Code and Second Class Township Code respectively are the same, the specific authority to control the use of public ways under Section 1202(17) of the Borough Code is much broader and less restrictive than Section 1156 of the Second Class Township Code which concerns the power of second class townships to regulate public streets and roads. The trial court determined, moreover, that *Scottdale* relied upon a third statutory provision, Section 1401 of the Borough Code, which confers broad contractual powers upon a borough as well as a series of cases which involved a borough or city but not a second class township. It decided that the reference to the *general term* "municipality" in *Scottdale* was

---

[2] This provision states, as follows:

(17) Street and sewer regulations; obstructions. To regulate the streets, sewers, public squares, common grounds, sidewalks, curbs, gutters, culverts and drains, and the heights, grades, widths, slopes and construction thereof; and to prohibit the erection or construction of any building or other obstruction to the convenient use of the same. 53 P.S. §46202(17).

[3] This provision states:

Each borough may make contracts for lawful purposes and for the purposes of carrying into execution the provisions of this act and laws of the Commonwealth. 53 P.S. §46401

not an acknowledgment of a grant of judicial authority
to a second class township. It stated that the decision
may be anomalous because of the incongruity which
allows a borough to regulate cable television services
but not a neighboring township. The trial court con-
cluded, however, that this anomaly is a creation of the
Legislature, rectifiable only by it and that the demo-
graphic differences between a borough and second
class township justify the difference in authority. The
trial court concluded that the Second Class Township
Code does not grant express or implied authority to
second class townships to regulate the franchising of
cable television.

This question has never been examined by appel-
late courts but has been addressed by several Pennsyl-
vania common pleas courts. Many are in accord with
the view of the trial court. *Whitpain Township v.
Cablevision of Pennsylvania,* 109 Montgomery County
Law Reporter 321 (1981); *Upper Merion Township v.
Community Cable Systems, Inc. of Pennsylvania,* 107
Montgomery County Law Reporter 64 (1980); *Tur-
chanik v. Plymouth Township,* 5 Pa. D. & C. 3d 381
(1977); *Vessella v. Lawrence Cablevision, Inc.,* 4 Pa.
D. & C. 3d 191 (1977); *Lower Nazareth Township v.
Service Electric Cable T.V., Inc.,* 43 Northampton
County Reporter 112 (1977). These cases follow the
logic of Judge GARB in denying the power to second
class townships to grant franchises for cable services.

Our view, however, conforms to those expressed in
*Relms Corporation v. Borough of Indiana and Town-
ship of White,* 25 Pa. D. & C. 3d 175 (1981), and *Mt.
Pleasant Township v. Astro Cablevision Corp.,* 24 Pa.
D. & C. 3d 228 (1981), which reached contrary conclu-
sions to the above cited common pleas court cases. For
the following reasons, we believe that a second class
township has the authority to regulate cable television
services.

Cable television companies occupy a monopolistic position in the market. Indeed, the Supreme Court stated in *Scottdale*:

> Cable television companies are or tend to be monopolies, have large capital investment, purport to provide their services to the public and make use of consent, license or franchise to use public ways as an important aspect of their businesses. There is no closed category of business activities affected with public interest which can be subjected to regulation as public utilities. But for the local exercise of control over charges, there is no rate protection for the benefit of the consumer exercised by the federal government or by the Commonwealth. (Footnotes omitted.)

476 Pa. at 52, 381 A.2d at 862. Because of this position, the need exists for a second class township to exercise local control over an industry which purportedly benefits and interests the public.

A second class township draws its power to regulate the cable television business from its grant of authority, under Section 1156 of the Second Class Code, over public streets and highways and can grant, by franchise, the privilege to occupy the public roadways with cable television wires, conduits and other apparatus. In our view, cable television companies are not "permittees" and thus are not subject to the proviso in the last sentence of Section 1156 of the Second Class Code. Whereas, therefore, this section expressly limits the conditions by which a second class township may issue permits to utilities that use its roadways, it does not limit the power of a second class township to control services provided for by cable television companies.

The general powers provision, Section 702 of the Second Class Code, also grants to second class town-

ships the authority to enact ordinances for the management and welfare of the township which are not inconsistent with the Constitution or laws of Pennsylvania. This power allows a second class township to provide for the orderly operation of services which furthers the common good if the public receives a benefit as it does from cable television.

We believe that the powers granted to a borough, upon which the holding in *Scottdale* is grounded, are substantially identical to the general powers[4] granted to second class townships and to the power of second class townships to regulate its roadways. A second class township should have no less authority than a borough to regulate merely because it is a second class township. Clearly, the natural role of local municipalities, including second class townships, where cable services have developed and public and industry benefit, is to regulate these services until the federal or state government acts in this area of the law.

When ascertaining legislative intent, the practical results of a particular interpretation may be considered. *Lehigh Valley Co-op Farmers v. Commonwealth,* 498 Pa. 521, 447 A.2d 948 (1982); 1 Pa. C. S. §1921

---

[4] In *Jeske v. Upper Yoder Township,* 44 Pa. Commonwealth Ct. 13, 403 A.2d 1010 (1979), a township board of supervisors dismissed a police officer for his failure to become a resident of Yoder Township. We held that the township was authorized to enact an ordinance requiring policemen to reside in the township. We stated that although second class townships did not have the specific authority under the Second Class Township Code to impose residency requirements, such authority is clearly within the general powers provision of the Second Class Township Code. We cited *Gagliardi v. Ambridge Borough,* 401 Pa. 141, 163 A.2d 418 (1960), to support the notion that a "substantially identical" general powers clause of the Borough Code had empowered a borough to adopt an ordinance requiring residency. Similarly, we extend *Scottdale* which was based on the general powers provision of the Borough Code to second class townships.

(c)(6). The consequences of a particular interpretation must be considered since it is presumed that the legislature did not intend an absurd or unreasonable result. *Valley Forge Industries, Inc. v. Armand Construction, Inc.,* 38 Pa. Commonwealth Ct. 603, 394 A.2d 677 (1978); 1 Pa. C. S. §1922(1). In our view, the legislature did not intend the anomalous situation wherein a borough may regulate cable television services while bordering townships may not.

Accordingly, we reverse the order of the trial court.

### ORDER

Now, May 14, 1985, the order of the Court of Common Pleas of Bucks County, entered October 17, 1983, at No. 83-06356, is reversed.

Judge WILLIAMS, JR. did not participate in the decision in this case.

Judges ROGERS and MACPHAIL dissent.