Carl Jeske, Jr., Appellant *v.* Upper Yoder Township, Appellee.

14

Argued May 8, 1979, before President Judge Bow-
MAN and Judges CRUMLISH, JR., WILKINSON, JR., MEN-
CER, ROGERS, BLATT and MACPHAIL. Judges DISALLE
and CRAIG did not participate.

*Patrick A. Gleason*, with him *Gleason, DiFrancesco,
Shahade & Markovitz*, for appellant.

*W. Louis Coppersmith*, with him *Gustave S. Mar-
golis* and *Margolis & Coppersmith*, for appellee.

OPINION BY JUDGE ROGERS, July 3, 1979:

Carl Jeske, Jr. has appealed from an order of the Court of Common Pleas of Cambria County affirming his dismissal from the Upper Yoder Township Police Department by reason of his failure to comply with a township ordinance requiring police officers to reside in the township.

Mr. Jeske was employed as a police officer of Upper Yoder Township for eight and one-half years. He never lived in the township. In 1976, the township and its policemen entered into binding arbitration under the Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §217.1 (Act 111) and the award which emanated therefrom provided that the township could, if it chose, impose a residency requirement upon its police officers. Pursuant to the award, on February 3, 1977, an ordinance was enacted providing:

Section 1. That all present police officers of the Township of Upper Yoder and any and all persons who shall hereinafter be hired and employed by the Township as police officers shall be bona fide residents of the Township who establish and maintain legal, full time and exclusive residence within the Township.

Section 2. Any police officer presently employed by the Township and who was employed by the Township on January 1, 1977, and who does not reside and live within the geographic limits of the Township, shall be given six months from January 1, 1977, to meet the residential requirement of this Ordinance.

On July 1, 1977, during a recess in a special public meeting, the Board of Supervisors met in executive session to consider charges by the Chief of Police that Mr. Jeske had failed to comply with the residency requirement. During the executive session the Board

fixed a date for a hearing of the charges and suspended Mr. Jeske from his employment pending a final disposition of the charges. On July 11, 1977, the Board conducted a hearing which at Mr. Jeske's specific request was in public. After this hearing, the Board dismissed Mr. Jeske for his failure to become a resident of the township. Mr. Jeske appealed his dismissal to the Court of Common Pleas which upheld the dismissal. This appeal followed. We affirm the order of the court below.

Mr. Jeske first raises the issue of whether the township complied with provisions of the Act of July 19, 1974, P.L. 486, *as amended,* 65 P.S. §261 et seq., known as the Sunshine Law. His contention is that the Board's vote to suspend him in executive session violated Section 2 of the Sunshine Law, 65 P.S. §262, which provides that "[n]o formal action shall be valid unless such formal action is taken during a public meeting." We disagree. Section 3 of the Law, 65 P.S. §263, authorizes that an executive session may be held during a properly constituted public meeting for the purpose of "[c]onsidering dismissal or disciplining of, or hearing complaints or charges brought against a public elected officer, employee, or other public agent unless such person requests a public hearing." The Board's decision to suspend Mr. Jeske pending the outcome of disciplinary proceedings was simply part of its consideration of the charges filed against him and was authorized by Section 4 of the Act of June 15, 1951, P.L. 586, *as amended,* 53 P.S. §814, which provides:

If the person sought to be suspended or removed shall demand a public hearing, the demand shall be made to the appointing authority. Such person may make written answers to any charges filed against him. The appointing authority shall grant him a public hearing, which

shall be held within a period of ten days from the filing of charges in writing, and written answers thereto filed within five days, and may be continued by the appointing authority for cause or at the request of the accused. At any such hearing, the person against whom the charges are made may be present in person and by counsel. The appointing authority may suspend any such person without pay pending the determination of the charges against him, but in the event the appointing authority fails to uphold the charges, then the person sought to be suspended or removed shall be reinstated with full pay for the period during which he was suspended, and no charges shall be officially recorded against his record. No order of suspension made by the appointing authority shall be for a longer period than one year.

A written record of all testimony of such hearings shall be filed with and preserved by the appointing authority, which record shall be sealed and not be available for public inspection in the event the charges are dismissed.

Further, this Act's allowance to the person charged of the right to demand a public hearing plainly suggests that the proceedings shall be conducted in executive session if the subject does not demand that it be public.

Mr. Jeske next says that his dismissal should be overturned because the Board violated Section 5 of the Sunshine Law, 65 P.S. §265, by its inadvertent failure to include in the advertised notice the information that the special meeting of July 1, 1977 (during which in executive session he was suspended) would be held in the township building. First, a harmless failure strictly to comply with the public notice requirements of the Sunshine Act will not always result in the in-

validation of action taken at an otherwise duly constituted public meeting. *See, e.g., Board of Commissioners of the Township of O'Hara v. Hakim,* 19 Pa. Commonwealth Ct. 661, 663-64, 339 A.2d 905, 907 (1975), where in the absence of a showing of harm we refused to quash an appeal based on the fact that a meeting was held at a place other than that advertised. Here, the advertised notice of the special meeting was, except for its failure to record the place, altogether proper and the special meeting was held at the Board's regular meeting place in the township building. In the absence of an allegation, much less a showing, of prejudice to Mr. Jeske, we are not inclined to overturn the Board's action on this account.[1] Furthermore, and more importantly, (1) the Board's dismissal action, which is what is complained of, was taken at the meeting of July 11, 1977, which was convoked and conducted without flaw, and (2) since the Act of June 15, 1951, as we have seen, authorizes suspensions to be effected at executive sessions, no valid objection to a suspension so effected can be founded on a defect of notice of the public meeting during a recess of which the action was taken.

Mr. Jeske next says that the township lacked the statutory authority to enact an ordinance requiring policemen to reside in the township. While there is no specific authority for second class townships to impose residency requirements, such authority is clearly within the general powers granted by Section 702 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* added by Act of August 27, 1963, P.L. 1280, 53 P.S. §65762, which empowers townships

---

[1] Section 10 of the Sunshine Law provides: "All acts and parts of acts are repealed in so far as they are inconsistent herewith, excepting those statutes which specifically provide for the confidentiality of information." Section 4 of the Act of June 15, 1951 provides for the confidentiality of information.

[t]o make and adopt all such ordinances, by-laws, rules and regulations not inconsistent with or restrained by the Constitution and laws of the Commonwealth as may be deemed expedient or necessary for the proper management, care and control of the township and its finances and the maintenance of peace, good government and welfare of the township and its trade, commerce and manufactures.

In *Gagliardi v. Ambridge Borough,* 401 Pa. 141, 163 A.2d 418 (1960), the Pennsylvania Supreme Court held that a substantially identical general powers clause of The Borough Code[2] authorized the enactment of a borough ordinance requiring residency. There, Mr. Justice (now Chief Justice) EAGEN wrote: "Certainly, no one can with justification question the reasonableness of the regulation this ordinance seeks to impose or deny that it is in furtherance of the common good." 401 Pa. at 146, 163 A.2d at 420.

Additional authority for Upper Yoder's ordinance is found in the arbitration award first referred to herein. Residency is a condition of employment within the provisions of Section 1 of Act 111, 43 P.S. §217.1, and hence is a matter within the jurisdiction of the arbitrator. *Cheltenham Township v. Cheltenham Police Department,* 8 Pa. Commonwealth Ct. 360, 301 A.2d 430 (1973). The ordinance being in implementation of a valid arbitration award is not in conflict with the requirements of any statute governing second class townships.

Mr. Jeske's final argument is that the residency requirement violated his due process rights by imposing a retroactive condition on his employment. This argument is without merit. The township's ordinance

---

[2] Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §46202(74).

was expressly prospective in nature, allowing ample time for compliance. It did not penalize Mr. Jeske for past conduct but merely imposed a valid condition on his future employment. Mr. Jeske had no constitutional right to be employed by the township while living elsewhere. *McCarthy v. Philadelphia Civil Service Commission*, 424 U.S. 645 (1976).

Order affirmed.

ORDER

AND Now, this 3rd day of July, 1979, the order of the Court of Common Pleas of Cambria County is hereby affirmed.