George R. Coder, D.C., et al., Petitioners v. Commonwealth of Pennsylvania, State Board of Chiropractic Examiners, et al, Respondents.

Argued November 17, 1983, before Judges CRAIG, DOYLE and BARBIERI, sitting as a panel of three.

*William A. Loftus, Shrager, McDaid & Loftus, P.C.,* for petitioner, George R. Coder, D.C.

*J. Stephen Feinour,* with him *W. E. Shissler, Nauman, Smith, Shissler & Hall,* for petitioner, Pennsylvania Chiropractic Society.

*Mary S. Wyatte,* Counsel, with her *David F. Phifer,* Chief Counsel, for respondent.

*John D. Killian, Killian & Gephart,* for intervenors, Adio Institute of Straight Chiropractic, Inc. et al.

*William J. Hawke,* with him *Joseph J. Malatesta, Jr., Malatesta & Hawke,* for intervenor, Chiropractic Fellowship of Pennsylvania.

OPINION BY JUDGE CRAIG, January 18, 1984:

This proceeding, addressed to our appellate jurisdiction as well as to our original jurisdiction, has been brought by the Pennsylvania Chiropractic Society, representing one faction of the chiropractic profession, and its co-petitioner Dr. Coder. It seeks an order to prevent the respondent State Board of Chiropractic Examiners from continuing in effect fifty-two chiropractic licenses which that board has granted to graduates of the ADIO Institute of Straight Chiropractic, Inc. (ADIO) and to enjoin any further issuance of such licenses to ADIO graduates. The Chiropractic Fellowship of Pennsylvania, representing another faction of the chiropractic profession, has intervened, along with ADIO.

Pursuant to an evidentiary hearing as well as argument, the court denied the requested orders. Before and after this case, there have been numerous other actions involving various issues generated by ADIO and its opponents, including *Brady v. State Board of Chiropractic Examiners* at No. 921 C.D. 1982 in this court, a companion case in which other ADIO graduates sought an order that they be granted licenses to practice chiropractic, like the fifty-two ADIO graduates involved in this case.

Throughout this case, there has echoed the intensive controversy which exists in the chiropractic profession over two disparate approaches to that healing art: (1) the "straight" chiropractic approach, to which ADIO purports to adhere (along with other schools not in Pennsylvania), in which treatment is confined to the adjustment of spinal subluxations by hand; and (2) the remaining view, colloquially labeled the "mixer" approach, which also involves, in addition, adjunctive treatment and

the use of "modalities," *i.e.*, treatment equipment and devices.

Clearly, the young people graduated from ADIO have become the victims of this dispute among their professional elders. The board, having authorized ADIO to function as a school and thus to receive as income the tuition paid by the young students—who have also committed years of their lives to study at ADIO—have granted licensure to some of those students, and those licenses have become the subject of intraprofessional warfare.

### The Statute

The major premise of law in this case is stated in the provisions of the Chiropractic Registration Act of 1951, governing the approval of chiropractic schools and colleges, Act of August 10, 1951, P.L. 1182, §§1-24, *as amended,* 63 P.S. §§601-624.

The statute repetitively expresses (1) the board's power and duty as to the approval of chiropractic schools and (2) the requirement that graduation from an approved school (as well as successful completion of specified examinations) is a condition of licensure to practice chiropractic.

Section 3 states:

It shall be the duty of the board to approve and disapprove chiropractic schools and colleges constantly. . . .

The same section empowers the board to establish standards for approval and concludes:

Failure to conform to the standards required by the board after notification shall render the graduates of any school ineligible for licensure within this Commonwealth.

63 P.S. §603. Section 4 specifies, for approval, a course of not less than 4,000 hours, including labora-

tory work, as well as classroom work, in anatomy, histology, bacteriology and other subjects. 63 P.S. §604.

Section 7 reiterates, as a prerequisite for licensure, not only a high school education but also graduation "from a board approved college of chiropractic." 63 P.S. §607.

Section 8 also, as a condition of licensure, requires graduation "from an approved legally incorporated and reputable school or college of chiropractic," repeating the 4,000-hour requirement of section 4. 63 P.S. §608.

Section 10 repeats the requirement of graduation as a prerequisite to licensure, providing that a student in the final semester "in an approved chiropractic college" may be admitted to the examination. 63 P.S. §610.

Thus the Act, somewhat redundantly, leaves no doubt that—in addition to meeting age and preliminary education requirements and passing examinations—an applicant for licensure as a doctor of chiropractic must have been graduated from an "approved" school or college of chiropractic.

THE FACTS AND EXCEPTIONS TO FINDINGS OF FACT

Because the *Coder* adjudication denies the relief requested by the petitioner Society and petitioner Coder, only they have filed exceptions. The exceptions on behalf of Dr. Coder have been presented in the professional style which is efficient and customary —following the order of the findings, conclusions and decree as they appear in the adjudication—but the Society's exceptions do not follow that or any other logical order; therefore, this opinion perforce must make disposition of the exceptions in the order sub-

mitted by counsel for Dr. Coder, conforming to the adjudication, footnoting the disposition of exceptions in order to preserve a reasonable degree of readability. In the following statement of the facts, each footnote number matches the number of a finding of fact in the adjudication, and each sentence or group of sentences preceding a footnote number constitutes a verbatim reiteration of the finding of fact so numbered in the adjudication. The disposition of the exceptions is stated in the footnote.

ADIO Institute of Straight Chiropractic, Inc. began its first class in January, 1978, and in that year commenced the process of applying to the board for approval.[1]

On September 13, 1979, at ADIO's request, the board granted ADIO provisional approval for one year from that date, based upon considerations stated in a follow-up letter from board counsel, including the following:

— that ADIO had submitted information as requested by the board;

— that ADIO's material "was sufficiently thorough and on its face substantially complied with the standards of the Board and requirements for approval;

— that, absent provisional approval, ADIO students "would be denied the opportunity to sit for the National Boards;" and

— that there should be a reasonable time frame within which ADIO could achieve full approval.

The provisional approval, as thus memorialized, included the stipulation "that a provisional approval

---

[1] Finding of Fact No. 1; no exception.

of ADIO does not render its graduates eligible to sit for examination in Pennsylvania.''[2]

The board revoked ADIO's provisional approval in January, 1980, but rescinded that revocation order on February 4, 1980, so that provisional approval of ADIO, subject to the same terms and conditions, was placed back in effect until the date in 1982 described below.[3]

In mid-1980, in a related proceeding in this court, ADIO, seeking to amend its articles of incorporation to enable it to grant the *degree* of Doctor of Chiropractic, was held to be subject to the jurisdiction of the Pennsylvania Department of Education with respect to the power to grant such a degree. *ADIO Institute of Straight Chiropractic, Inc. v. Davis,* No. 943 C.D. 1980, filed November 7, 1980.[4]

In 1980, ADIO submitted a self-study to the board, and the board appointed an inspection team to visit and evaluate the school in December, 1980. The inspection team made findings and recommended against approval of ADIO, to which recommendation ADIO made objection.[5] As a basis for adjudicating the issue, the board proposed to take evidence through a hearing examiner. Some time was consumed in the process of appointing a hearing examiner. In the

---

[2] Finding 2. Society Exception 7, questioning all of Finding 2, is dismissed. The board counsel's letter constituted an official notification of the board's decision, and the board has acknowledged that letter and never repudiated it, and the Society's brief points to no evidence negating it.

[3] Finding 3. Society Exception 8, to Finding 3, questions the 1980-82 period of provisional approval. The exception is dismissed because the Society's own brief acknowledges that the board restored provisional approval shortly after January 10, 1980 and subsequently rescinded it by vote on June 17, 1982.

[4] Finding 4; no exception.

[5] Finding 5; no exception.

meantime, ADIO's first classes of students were graduated, beginning in March, 1981.[6]

ADIO graduates during that period initiated several actions in this court seeking orders directing the board to allow ADIO graduates to sit for the board's examinations. Beginning with an opinion and order of March 27, 1981 in *Smith v. State Board of Chiropractic Examiners,* No. 485 C.D. 1981, and subsequently in four other actions involving succeeding classes of ADIO graduates, this court directed the board to permit the graduates to sit for the licensure examinations, to avoid the disadvantage to the graduates which could result by their education and skills becoming stale pending the time-consuming approval process with respect to ADIO. In each case, the orders of this court recognized the board's limitation of the provisional approval with respect to licensure, expressly stating that the court was not ordering the issuance of licenses, which remained subject to determination that the examinees' education in chiropractic be in a school approved in accordance with law.[7]

After the board appointed Professor Kenneth L. Hirsh, of the Duquesne School of Law, as hearing examiner in mid-1981, Professor Hirsh proceeded with ten days of hearings during October and November, 1981, accumulating 2283 pages of record transcript and sixty exhibits.[8] In the spring of 1982, Professor Hirsh submitted a recommended adjudication and orders, proposing that the board deny ADIO's application for approval, continue ADIO's provisional approval subject to the same limitations and invite ADIO to renew its application for reinspection, with particular emphasis upon assurance to the

---

[6] Finding 6; no exception.

[7] Finding 7; no exception.

[8] Finding 8; no exception.

board with respect to laboratory training, clinical experience, as well as other matters listed in Professor Hirsh's findings and conclusions.[9]

On June 17, 1982, the board convened a special meeting to consider Professor Hirsh's recommended adjudications and orders. The board did not publish or post any notice with respect to that special meeting. The individual petitioner, Dr. Coder, was present at the meeting, and the association petitioner was represented there.[10] By action at the meeting on June 17, 1982, and also by written order issued July 8, 1982, the board ordered:

— that ADIO's application for approval be denied;

— that the provisional approval of ADIO be rescinded;

— that ADIO be invited to renew its application for reinspection after providing an updated self-study, assurance with respect to laboratory training in anatomy, bacteriology, histology, pathology, x-ray, biochemistry and spinal biomechanics; and

---

[9] Finding 9. Although the Society takes no exception to this Finding 9 expressly, Society Exception 19 takes exception to failure to find that Professor Hirsh had concluded that there were numerous ADIO deficiencies which were a sufficient basis for denial of approval, and that ADIO did not meet statutory and administrative requirements for approval. Because Finding 9 expressly states that Professor Hirsh proposed "that the board deny ADIO's application for approval," the requested fact has been adopted, and Society's Exception 19 is dismissed. Society Exception 20, excepting to failure to find that ADIO did not timely file exceptions or objections to the report of Professor Hirsh, is dismissed as relating to an irrelevant matter; the timeliness of any such exceptions or objections has not been an issue, and the Society cites no legal basis for the proposition that formal exceptions to a hearing examiner's report are necessary.

[10] Finding 10; no exception.

— assurance of affording its students clinical experience at diagnosis as described in the standards of the Council on Chiropractic Education (CCE) or equivalent subject to waiver or modification by the board in accordance with Pennsylvania law.[11]

At the special meeting of June 17, 1982, by majority vote, the board adopted a motion which gave ADIO "interim approval" for a period of one year to allow its graduates to sit for examinations; the board also ordered that licenses be issued to all ADIO graduates passing the examination during that period.[12]

After the present petitioners, on June 25, 1982, filed with the board a formal complaint under 1 Pa. Code §35.9 against the issuance of such licenses, the board met on July 8, 1982.[13]

As a consequence of a motion adopted by majority vote of the board at that meeting, the board issued a written order of July 8, 1982 reflecting the license-

[11] Finding 11. Society Exception 14 objects to failure to find that the board determined that ADIO did not comply with legal requirements necessary for approval. Because the board's action of June 17, 1982 (Haug motion) expresses no such content and because the board order of July 8, 1982, embodies the remainder of the Haug motion and is correctly stated in Finding 11, Society Exception 14 is dismissed.

[12] Finding 12. Society Exceptions 9 and 15 except to Finding 12. These exceptions are dismissed because the Society's Exception 18 acknowledges that four of the seven members of the board did vote to grant interim approval on June 17, 1982, albeit excepting also to failure to find that such vote was "out of sympathy" for ADIO graduates while expressly acknowledging that ADIO did not meet legal requirements for approval. Because the board action contained no expression with respect to such compliance or noncompliance, and because the motivations of the voting board members are clearly irrelevant—their actual votes being determinative—Society Exception 18 is also dismissed.

[13] Finding 13; no exception.

issuing action of June 17, as modified by motion adopted on July 8, thus ordering

> that licenses be issued to all graduates of the ADIO Institute of Straight Chiropractic who have successfully completed the examination but that students who graduate from ADIO in the future be ineligible to sit for the licensure examination before the State Board of Chiropractic Examiners until such time as ADIO is an approved school according to law.[14]

At a further meeting on September 9, 1982, the board, by majority vote, ordered that "all graduates and last semester students" of ADIO "be permitted to sit for the examinations for chiropractic licensure ... for the duration of the period of interim approval, which is until June 30, 1983," in compliance with the previous orders of this court. The September 9 order also provided that

> successful completion of such examination should in no way be construed as conferring the right to licensure.

Pursuant to the order of July 8, 1982, the board has issued licenses to fifty-two graduates of ADIO, authorizing them to practice chiropractic and use the title of Doctor of Chiropractic.[15]

---

[14] Finding 14. Coder Exception 1 is taken to failure to find that the board rescinded ADIO's "interim approval" in the July 8, 1982 meeting. Because the record contains no such rescission action and the Coder brief points to none, Coder Exception 1 is dismissed. Coder Exception 2 is to failure to find that the board orders of June 17, 1982 and July 8, 1982 "found" that ADIO had failed to comply with statutory requirements for approval necessary for licensing of graduates. Because neither the motions in the minutes nor the orders, as issued, contain any such terms, and the Coder brief directs attention to none, Coder Exception 2 is dismissed.

[15] Findings 16 and 17. No exceptions have been taken to Findings 15, 16 and 17.

## QUESTIONS PRESENTED

The issues in this case are as follows:

1. Should the court overturn the board's grant of licenses to fifty-two ADIO graduates on the ground that ADIO is a school of chiropractic and not a college authorized by law to issue degrees?

2. Should the court overturn the board's licensure action on the ground that, when initially taken at a special meeting, it was invalid and ineffective because of the board's failure to publish and post notice of that meeting?

3. Should the court overturn the board's grant of interim approval to ADIO and licenses to its graduates on the ground that such actions constituted adjudications invalid under 2 Pa. C. S. §§101, 507?

4. Should the court declare the board's action in granting licenses to fifty-two ADIO graduates invalid in view of the nature of the approval status which the board conferred upon ADIO?

## RECEPTION OF EVIDENCE RELATING TO THE ISSUES

As noted above, this proceeding is one addressed to the appellate jurisdiction of this court, seeking to review the license-issuance action of the board, as well as being one addressed to the original jurisdiction of this court. Although the litigation has proceeded, without objection from either side, in part as an original jurisdiction proceeding in the nature of equity, the issues presented—as illustrated by the foregoing statement of them—essentially call upon this court to review actions of the State Board of Chiropractic Examiners, taken pursuant to that board's extended, but nevertheless complete, administrative process. Pursuant to many days of hearing before the board's

hearing examiner, that process developed a record before the hearing examiner and produced his report and recommendations.

The essence of the question before this court has been whether or not the court should intervene in the actions of the board, as it seeks to administer its function, under the governing statute, in the context of intraprofessional warfare described above.

The various items of evidence offered on behalf of the Society and Dr. Coder, and excluded by the court, essentially constituted an attempt to have the court repeat at the judicial level the entire administrative process through which the board had already gone, including much that had already been extensively heard before Professor Hirsh as hearing examiner.

Coder Exception 3 relates to the attempt to introduce evidence that "the Board found that ADIO had failed to comply with statutory requirements" for approval. Such evidence, of course, is irrelevant and immaterial in view of the fact that the record does contain the actual orders of the board and its entire minutes with respect to its meetings. To the extent that the offer consisted of an attempt to go behind the board's official actions by showing personal reservations and motivations, it is equally impermissible. It is not the function of a court to probe the mental processes of administrators. *See United States v. Morgan,* 313 U.S. 409 (1941), *Commonwealth v. Pennsylvania Public Utility Commission,* 17 Pa. Commonwealth Ct. 351, 331 A.2d 598 (1975).

Accordingly, Coder Exception 3 is therefore dismissed.

Society Exception 2, concerning exclusion of an offer to prove that ADIO did not comply, is similarly dismissed.

Coder Exception 4, concerning the court's exclusion of evidence "concerning the nature of the statutory requirements for approval" is dismissed as immaterial and unnecessary; the statute speaks for itself.

Coder Exception 5, concerning the exclusion of evidence to show a threat to the public health from the licensing of graduates of a non-approved school, is also dismissed because such evidence would have been superfluous and therefore immaterial; as a matter of law, the purpose of the licensing statute is to protect the public health.

Society Exception 4, concerning the exclusion of an offer to have a former attorney for the board testify that the board had standards, is dismissed because board standards, if embodied in duly-adopted regulations in accordance with law, would be susceptible to judicial notice, without the necessity of testimony.

Society Exception 6, concerning the exclusion of documentary evidence from a national accrediting council and from ADIO, as to ADIO's compliance with law, is dismissed as proposing a similarly redundant offer of matters already presented to the board or to its hearing examiner.

DISCUSSION OF LEGAL ISSUES

1. *Degree-Granting Authorization*

In the findings, judicial notice is taken of the unpublished decision of this court in *ADIO v. Davis,* refusing to order the Secretary of the Commonwealth to approve degree-granting authority in ADIO's proposed charter amendment, absent approving action from the Pennsylvania Department of Education. There is no dispute that ADIO still does not have

authority to grant such a degree. Therefore, Society Exception 3, relating to the exclusion of testimony that ADIO lacks degree-granting authority, is dismissed because the offered evidence was unnecessary.

Moreover, there is nothing in the Chiropractic Registration Act which requires graduation from a degree-granting institution as a precondition of licensure. Repeatedly, as noted above, the Chiropractic Registration Act requires only "graduation" from a "school"—as well as a "college"—of chiropractic. The only reference to "Doctor of Chiropractic" in the statute is in section 21, which provides that any person who has a valid certificate of registration as a chiropractor may not only practice chiropractic but may also "use the title 'Doctor of Chiropractic' and the abbreviation 'D.C.'" 63 P.S. §621. Thus the law does not make any degree a prerequisite to licensure; it simply provides that one consequence of licensure shall be the right to use the "title" of Doctor of Chiropractic. The statute's creation of the title expressly stands on its own feet, without any necessary association with the concept of a degree in like terms. Although the statute, as written, may well result in some Pennsylvania chiropractors bearing both the title and degree of Doctor of Chiropractic, while others bear only that title, without such a degree, a court cannot reject the legislative determination for that reason.

Hence, Society Exception 22, relating to failure to "find, as a matter of law," that degrees are necessary for chiropractic licensure, is dismissed.

In addition, because the legislature has written the law not to require degree-granting capacity, the Society's offer of testimony by an educator to prove "the necessity of degree-granting authority . . . to insure that high academic standards are maintained

and the public welfare protected'' was irrelevant—a matter addressable only to the legislature—and Society Exception 5, directed to that exclusion, is dismissed.

## 2. *Sunshine Law Compliance*

As stipulated and found above, there was no published or posted advance notice of the board's special meeting of June 17, 1982 in accordance with section 5 of the Act of July 9, 1974, P.L. 486, *as amended,* 65 P.S. §265 (popularly, the Sunshine Law). As the findings also note, the individual petitioner was present at that meeting and the association petitioner was represented there.

However, the board's July 8, 1982 meeting was held with unchallenged procedural validity. At that valid meeting, the board issued its written order to grant the contested licenses only after the petitioners had their opportunity to present their complaint on the very issue of those licenses. The July 8, 1982 written order, at the least, ratified the June 17 action with modifications; the July order explicitly directed the issuance of licenses to ADIO graduates who had by then passed their examinations, but, unlike the June 17 order, it also expressly forbade the licensure of any other ADIO graduates pending unqualified approval of that school.

In *Erie Municipal Airport Authority v. Automation Devices, Inc.,* 15 Pa. Commonwealth Ct. 273, 325 A.2d 501 (1974), we held that a public agency may cure the effect of a meeting defective as to notice by ratifying the action at a subsequent meeting properly held. *Accord, Jeske v. Upper Yoder Township,* 44 Pa. Commonwealth Ct. 13, 403 A.2d 1010 (1979).

Petitioner Coder has additionally argued that, because the July 8 order did not mention the interim

approval of ADIO and because that order allegedly "superseded" the June 17 action, the final state of the board's record on July 8 does not support the proposition that interim approval for one year was granted to ADIO. However, the July 8 order, by reiterating the matter of issuance of licenses to ADIO graduates, necessarily carried with it the concept that those licensees were the graduates of a school having at least interim approval at that juncture. Moreover, the board, in addition, continued thereafter to recognize ADIO as having the interim approval status; there is no basis for reading into the July 8 order an interpretation different from that which the board itself has continued to give to it.

Moreover, where a Sunshine Law notice was defective as to identification of the place of meeting, but the complaining parties were actually present or represented at the meeting, we have declined, in view of the absence of prejudicial impact upon those parties, to invalidate the action taken at the meeting. *O'Hara Township Board of Commissioners v. Hakim,* 19 Pa. Commonwealth Ct. 661, 663-64, n.1, 339 A.2d 905, 907, n.1 (1975).

Our decision in *Bensalem Township School District v. Gigliotti Corp.,* 51 Pa. Commonwealth Ct. 609, 415 A.2d 123 (1980) is distinguishable on its facts in that, as specifically noted by our opinion there, there was no evidence that the complaining parties were present or represented at the meeting, and there was evidence that they were prejudiced by the absence of notice.

Accordingly, Coder Exception 6 and Society Exception 17, both relating to failure to "find" that the interim approval and license-issuance actions were invalid because taken in violation of the Open Meeting Law, are dismissed.

### 3. *Findings and Reasons*

Coder Exception 7 is directed to failure to "find" that the board's interim approval and licensure-granting actions were invalid for lack of accompanying findings and reasons, as required by 2 Pa. C. S. §§101, 507.

Within the bounds of this issue, there is a distinction between the issuances of the licenses and the grant of interim approval status. In taking action to issue the fifty-two licenses, the board clearly was not concluding an adjudicative "proceeding" under 2 Pa. C. S. §507, any more than any other licensing agency is making an adjudication when it issues a license, to authorize practice of a profession or otherwise. The fifty-two ADIO graduates had taken and passed the board's examinations. Once the board had arrived at an approval status for ADIO sufficient in the board's view to warrant licensing, the action issuing the licenses was an administrative one, like many others taken at board meetings, and not an adjudication.

The pivotal point, therefore, is whether the board's conferring of interim-approval status upon ADIO was made on the basis of findings, assuming that action to constitute an adjudication, that is, a "determination . . . affecting . . . rights" of ADIO, the applicant school which had pursued the proceeding before the hearing examiner.

The reviewing court has the discretion to determine whether the findings which accompany an adjudication are sufficient. *Dutchland Tours, Inc. v. Pennsylvania Public Utility Commission,* 13 Pa. Commonwealth Ct. 54, 57, 318 A.2d 394, 395 (1974). The findings need only be enough to enable the court to determine the questions and insure that the conclu-

sions follow from the facts. *Philboro Coach Corp. v. Pennsylvania Public Utility Commission,* 67 Pa. Commonwealth Ct. 176, 178, 446 A.2d 725, 726 (1982).

The board's interim-approval action certainly was based upon the extensive evidentiary hearing conducted for it by its hearing examiner, and was taken, at least in part, on the basis of his findings. The hearing examiner had recommended an order continuing provisional approval, without licensure. The board, not bound by its hearing examiner, adopted a modification of that recommendation, granting the interim approval.

Accordingly, Coder Exception 7 and Society Exception 21, both relating to the procedural framework for an adjudication, are dismissed.

### 4. *Interim Approval of a School as a Basis for Licensing Its Graduates*

Above noted is the legislative reiteration that the board shall grant chiropractic licenses only to graduates of schools which it has deemed to be "approved." From 1979 until 1982, the board awarded ADIO an approval status labeled "provisional approval."

The board, as recognized in several decisions of this court, expressly limited provisional approval as an approval basis insufficient for licensure. Upon revoking provisional approval, the board immediately replaced it with an approval status entitled "interim approval."

The net effect of the board's actions in July and September, 1982 has been to establish the status of interim approval as sufficient to license ADIO graduates who had then passed the board examination, while only allowing other ADIO graduates to take their examinations.

Section 3 of the Chiropractic Registration Act, significantly confers on the board the duty "to approve and disapprove chiropractic schools and colleges constantly," suggesting, by the adverb which ends that quoted passage, that the approval process is a dynamic one. To read that authorization as a pair of polar absolutes—only total disapproval or unqualified *permanent* approval—is not a supportable literal reading in face of the complexity of the administrative responsibility of a professional examining board.

In support of its discretion, the board has cited *Pennsylvania Department of Environmental Resources v. Butler County Mushroom Farm*, 499 Pa. 509, 454 A.2d 1 (1982) and *Gilligan v. Pennsylvania Horse Racing Commission*, 492 Pa. 92, 422 A.2d 487 (1980), decisions of the Pennsylvania Supreme Court according broad administrative discretion to public agencies in carrying out the functions conferred upon them by statutes which the legislature has necessarily been required to word in broad terms, in deference to the agency expertise needed to function in a specialized field. There is no reason why this court should not similarly respect the professional expertise of the board in granting interim approval with a scope sufficient to support the licensing of those graduates who had, at the time of the board's action, fully passed the board's own examinations.

As pointed out in the brief for intervenor Chiropractic Fellowship of Pennsylvania, the findings of the board's hearing examiner provide a factual basis for the hearing examiner's recommendation of the continuation of provisional approval and, in the board's view, a basis for the board's grant of interim approval. The hearing examiner's balanced findings, noting that the board had regarded ADIO's self-study

as satisfactory, also independently found that ADIO had a faculty which is acceptable and improving, and that there were improvements in the school's administrative and library elements, as well as adequacy in its physical plant. Although the hearing examiner had reservations with respect to ADIO's side of the chiropractic philosophical differences, he nevertheless found that the curriculum met statutory criteria.

It was for the board, and not a court, to weigh these balanced findings, in deeming them sufficient to support the grant of approval to ADIO, albeit one limited in time as "interim." In short, the board granted an approval, not limited in content as its "provisional approval" had been, but limited in the timespan of its effectiveness.

It follows that the board can license successful examinees from a school which the board has approved subject to a time limitation appropriate to the dynamics of the board's continued oversight of chiropractic educational institutions. Neither the terms of the statute nor case law afford any basis for issuing a declaration that licenses which the board granted to ADIO graduates should be invalidated, or a direction that the board should be ordered to revoke them en masse.

Accordingly, Coder Exception 8 and Society Exceptions 10 and 16, all directed to Conclusion of Law No. 1, relating to the grant of approval, are dismissed. Also, Coder Exception 9 and Society Exception 11, directed to Conclusion of Law No. 2, concluding that the licenses should not be invalidated, are dismissed.

### Relief

From the foregoing findings and conclusions, the court's refusal to order revocation of the fifty-two licenses necessarily follows. Coder Exception 10 and

Society Exceptions 1 and 13, directed to the decree nisi and to Conclusion of Law No. 4, are therefore dismissed.

Because the record supports the court's findings that the board has taken action against the issuance of additional licenses, there is no controversy on that point between petitioners and the respondent board; the point essentially is moot, and no decision or court sanction is required. Therefore, Coder Exception 11 and Society Exceptions 1 and 12, directed also to the decree and to Conclusion of Law No. 3, are dismissed.

A final order follows.

### Order

Now, January 18, 1984, petitioners' appeals are dismissed, the action of the State Board of Chiropractic Examiners, as appealed from, is affirmed, all exceptions are dismissed, and the relief requested by petitioners is denied.