KREBS CHRYSLER–PLYMOUTH, INC., and Mick's North Hills Chrysler–Plymouth, Inc., Petitioners,

v.

STATE BOARD OF VEHICLE MANUFACTURERS, DEALERS AND SALESPERSONS, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 1994.

Decided Feb. 14, 1995.

Donald S. Mazzotta, for petitioners.

Joyce McKeever, Chief Counsel, for respondent.

Before SMITH and KELLEY, JJ., and RODGERS, Senior Judge.

SMITH, Judge:

Krebs Chrysler–Plymouth, Inc. (Krebs) and Mick's North Hills Chrysler–Plymouth, Inc. (Mick's) (collectively Petitioners) petition for review of the order of the State Board of Vehicle Manufacturers, Dealers and Salespersons (Board) which dismissed a protest filed by Petitioners pursuant to Section 18(a) of the Board of Vehicles Act (Act), Act of December 22, 1983, P.L. 306, *as amended,* 63 P.S. § 818.18(a), and concluded that Petitioners had not shown good cause to prevent the establishment of Benke Motors, Inc. (Benke) as a new Chrysler–Plymouth dealer. The issues raised for review are whether the Board's findings of fact are supported by substantial evidence, and whether the Board abused its discretion in determining that Petitioners failed to meet their burden of proving that good cause exists for not permitting Chrysler Corporation (Chrysler) to establish Benke as a Chrysler–Plymouth dealer.

I

Benke currently is a Jeep–Eagle vehicle dealer located in Gibsonia, Pennsylvania. On September 22, 1993, Benke entered into an agreement for the purchase of certain assets of Valley Motors, Inc., d/b/a Rea Motors, Inc. (Rea), subject to Chrysler's approval of Benke as a Chrysler–Plymouth dealer at its Gibsonia location. The relevant market area (RMA)[1] within a ten-mile radius around Benke contains four Chrysler–Plymouth dealers: Krebs, Mick's, Rea, and Teo's Chrysler–Plymouth, all of which are located in the southern half of the RMA which is within the greater metropolitan Pittsburgh area. On October 7, 1993, Chrysler notified the four dealers of the proposal to establish Benke as a Chrysler–Plymouth dealership. Krebs and Mick's thereafter filed notices of protest with the Board pursuant to Section 18(a) of the Act,[2] and Chrysler filed answers denying that good cause existed for not permitting a new Chrysler–Plymouth dealer. The Board consolidated the protests filed by Krebs and Mick's and granted Benke's petition to intervene.

After three days of hearings at which the parties presented considerable and sometimes conflicting evidence, the Board found that, *inter alia,* the number of households in the RMA had grown between 1980 and 1993 and was projected to continue growing; Krebs and Mick's are located more than seven miles to the southwest of Benke, and the minimum driving times from Benke to Krebs and Mick's are approximately seventeen and twenty minutes, respectively, through heavily congested areas; the new unit sales of Krebs and Mick's are heavily concentrated in the southwest quadrant of the RMA; in 1993,

1. The pertinent part of Section 2 of the Act, 63 P.S. § 818.2, provides that where a manufacturer is seeking to establish an additional new vehicle dealer, the "relevant market area" shall be the area within a radius of ten miles around the proposed site of the dealer.

2. Section 18(a) of the Act provides:
   (a) **Additional or relocation of new vehicle dealers**—In the event that a manufacturer seeks to enter into a franchise establishing an additional new vehicle dealer or relocating an existing new vehicle dealer within or into a relevant market area where the same line-make is then represented, the manufacturer shall in writing first notify the board and each new vehicle dealer in such line-make in the relevant market area of the intention to establish an additional dealer or to relocate an existing dealer within or into that market area. Within 20 days after the end of any appeal procedure provided by the manufacturer, any such new vehicle dealer may file with the board a protest to the establishing or relocating of the new vehicle dealer. When such a protest is filed, the board shall inform the manufacturer that a timely protest has been filed, and that the manufacturer shall not establish or relocate the proposed new vehicle dealer until the board has held a hearing, nor thereafter, if the board has determined that there is good cause for not permitting the addition or relocation of such new vehicle dealer.

Chrysler–Plymouth car retail registrations had increased 39.3% in the RMA; according to a market study conducted by Chrysler evaluating performance and distribution of sales throughout the RMA, Chrysler–Plymouth retail registrations in 1993 increased 118% in the Benke study area while the Krebs and Mick's study areas experienced increases of 39.6% and 11.1% respectively; in 1992, the Benke study area accounted for only 7.4% of Krebs' sales, and only 6.7% of Mick's Chrysler–Plymouth sales; in 1992 and 1993, Mick's Jeep–Eagle sales have increased dramatically in spite of the competition from Benke; and Krebs, Mick's, and Benke all possess substantial sales and service facilities, equipment, and inventories and are well staffed with qualified service personnel.

After setting forth its findings of fact, the Board then noted that it was bound by Section 18(c) of the Act, 63 P.S. § 818.18(c), which provides:

(c) **Board to consider existing circumstances**—In determining whether good cause has been established for not entering into or relocating an additional new vehicle dealer for the same line-make, the board shall take into consideration the existing circumstances, including, but not limited to:

(1) Permanency of the investment of both the existing and proposed new vehicle dealers.

(2) Growth or decline in population and new car registrations in the relevant market area.

(3) Effect on the consuming public in the relevant market area.

(4) Whether it is injurious or beneficial to the public welfare for an additional new vehicle dealer to be established.

(5) Whether the new vehicle dealers of the same line-make in that relevant market area are providing adequate competition and convenient customer care for the vehicles of the line-make in the market area which shall include the adequacy of vehicle sales and service facilities, equipment, supply of vehicle parts and qualified service personnel.

(6) Whether the establishment of an additional new vehicle dealer would increase competition and whether such increased competition would be in the public interest.

(7) The effect the denial of relocation will have on a relocating dealer.

In its discussion of these factors, the Board observed that Krebs, Mick's, and Benke are all dealers who have distinguished themselves in the automobile business and who remained financially sound during a period when the automobile industry was experiencing a decline. Further, the evidence showed that 50% of the households in the RMA are located in the southwest quadrant where Krebs and Mick's are located, whereas the northern half of the RMA, where no Chrysler–Plymouth dealers are located, contains 15% of the households. In addition, Krebs' and Mick's locations place them more than ten miles from a substantial portion of the northern half of the RMA, and given their locales and the particularly congested driving conditions around them, Krebs and Mick's are not able to provide convenient customer care for the sale and service of Chrysler–Plymouth products to much of the RMA.

The Board concluded that the consuming public would be benefited by the establishment of Benke as a Chrysler–Plymouth dealer because the Gibsonia location would enable Benke to provide a level of convenience not currently available to consumers wishing to purchase or have service performed on Chrysler–Plymouth products. The Board further observed that the additional exposure for Chrysler–Plymouth products in a more convenient place would make it more likely that consumers would compare prices at other dealerships, would be beneficial to the public welfare by providing a wider selection of motor vehicles at more competitive prices, and would also benefit the existing Chrysler–Plymouth dealers by creating more customer traffic in their showrooms. The Board determined that Petitioners had not shown good cause to prevent establishment of Benke as a new Chrysler–Plymouth dealer and dismissed Petitioners' protest.

## II

Petitioners argue to this Court that the Board's decision must be overturned be-

cause it is not supported by the weight of substantial evidence nor the facts of record, and the Board abused its discretion in making its determination. This Court's scope of review of the Board's decision is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact were not supported by substantial evidence. *Pritz Auto, Inc. v. State Board of Vehicle Manufacturers, Dealers & Salespersons,* 113 Pa.Commonwealth Ct. 89, 536 A.2d 485 (1988). In the absence of bad faith, fraud, capricious action or abuse of power, reviewing courts will not inquire into the wisdom of an administrative agency's action or into the details or manner of executing agency action. *Slawek v. State Board of Medical Education & Licensure,* 526 Pa. 316, 586 A.2d 362 (1991).

▐ Petitioners present the issue as whether the Board can "force" Chrysler to establish a new dealer point where Chrysler does not need or want such a point, and state that the Board decided that Chrysler "needs to" or "has to" establish a dealership point in the Benke RMA. There is nothing in the Board's opinion suggesting that the Board has either forced Chrysler to establish a new dealer point or that Chrysler needs to establish a dealer point in the Benke RMA. Pursuant to Section 18(a) of the Act, it is the Board's function to determine simply whether good cause exists for not permitting a dealer or manufacturer from establishing a dealership at a given point. It was Petitioners' burden to establish the existence of good cause to deny the location.

Petitioners assert that the testimony of Chrysler's district zone manager, its market review and planning specialist, and its district service manager indicates that Chrysler has never contemplated another Chrysler–Plymouth dealership in the RMA because there is no need for a dealership. The opinions of several Chrysler employees neither express Chrysler's intentions, nor is Chrysler bound by their opinions. The fact that

Chrysler gave notice to dealers in the RMA of its intention to permit a dealer at the Gibsonia location—and engaged in a market study for that purpose and attended hearings before the Board—clearly belies Petitioners' characterizations of Chrysler's intent to the contrary. Moreover, a review of the Chrysler employees' testimony lends no support for Petitioners' assertions that Chrysler, as a corporation, neither needed nor wanted a Chrysler–Plymouth dealership at the Benke location. To the contrary, Chrysler could have simply rejected Benke's application for a Chrysler–Plymouth dealership.

▐ In arguing that the Board's findings are not supported by substantial evidence in the record, Petitioners nonetheless fail to demonstrate in what manner this may be so. Instead, Petitioners recite considerable testimonial and documentary evidence which purportedly establishes good cause for not permitting the addition of Benke as a new vehicle dealer. Petitioners also contend that the Board chose to disregard certain evidence, relied too heavily on other exhibits and testimony, misunderstood the nature of economic damage to Petitioners, and that the Board overall ignored the substantial weight of the evidence presented to it.

The Board as factfinder is charged with weighing evidence and resolving conflicts in testimony; and this Court may not indulge in those processes but will defer to the Board's findings unless there is no support for them in the record. *Pritz Auto.* In the present matter, Petitioners' arguments necessarily pertain only to the relative weight given by the Board to conflicting evidence and do not show that the Board's findings were unsupported by substantial evidence.[3]

▐ Finally, Petitioners argue that the Board abused its discretion because it failed to include all necessary and sufficient findings of fact in its decision pursuant to Section 18 of the Act. In particular, Petitioners assert that the Board made no findings regard-

---

3. Petitioners also contend that the Board's reliance upon the "study areas" created by Chrysler for the purpose of analysis was an abuse of its discretion because the study areas include areas outside of the Benke RMA. This lack of exact correspondence between the RMA and the study areas certainly does not invalidate the Board's findings, and instead goes solely to the weight of the evidence presented.

ing current competition, the adverse long-term impact on the public welfare, and market penetration. A reviewing court has the discretion to determine whether the findings that accompany an administrative agency adjudication are sufficient. *Coder v. State Board of Chiropractic Examiners,* 79 Pa.Commonwealth Ct. 567, 471 A.2d 563 (1984). However, an administrative agency is not required to address each and every allegation of a party in its findings, nor is it required to explain why certain testimony has been rejected. *Makris v. Bureau of Professional & Occupational Affairs,* 143 Pa.Commonwealth Ct. 456, 599 A.2d 279 (1991). The findings need only be enough to enable the Court to determine the questions and ensure that the conclusions follow from the facts. *Coder.*

In the matter sub judice, the Board made thirty-seven findings of fact, most of which directly addressed the factors set forth in Section 18(c) of the Act. As noted above, the Board's opinion further discussed the conclusions it reached from the findings, including consideration of the substantial investments of the participating dealers, population and vehicle registration distribution and trends in the RMA, convenience to the public, and the effect a new dealer would have on the public and on existing dealers. Also noteworthy is that because Benke is purchasing Rea's assets, there would be no net increase in the number of Chrysler–Plymouth dealers in the RMA. Upon review, this Court is satisfied that the Board considered all of the necessary factors required by the Act. Accordingly, the Board's decision is affirmed. In light of this Court's decision, further issues raised by Benke as intervenor need not be addressed.

### ORDER

AND NOW, this 14th day of February 1995, the order of the State Board of Vehicle Manufacturers, Dealers and Salespersons is affirmed.

PELLEGRINI, J., did not participate in the decision in this case.