**PENNSYLVANIA PRIDE, INC., Plaintiff,**

v.

**SOUTHAMPTON TOWNSHIP, Defendant.**

No. 3:CV99–1801.

United States District Court, M.D. Pennsylvania.

Dec. 28, 1999.

**360**

J. Michael Murray, Cleveland, OH, Steven D. Shafron, Berkman, Gordon, Murray, & DeVan, Cleveland, OH, Carl Janavitz, Pittsburgh, PA, for Pennsylvania Pride, Inc., plaintiff.

Bernard P. Matthews, Jr., Meyer Darraugh Buckler Bebenek & Eck, Greensburg, PA, for Township of Southampton, defendant.

## MEMORANDUM

MUNLEY, District Judge.

Before the court for disposition is the plaintiff's motion for preliminary injunction. The plaintiff is Pennsylvania Pride, Inc., and the defendant is Southampton Township, Pennsylvania. A hearing was held on November 22, 1999, and the matter has been fully briefed.

### 1. Background

On October 14, 1997, the Southampton Township, Pennsylvania, Board of Supervisors enacted Ordinance 97–02 (hereinafter "Ordinance"), affecting adult sexually oriented businesses. The law's purpose is set forth as follows:

> ... to promote the health, cleanliness, comfort and safety of the citizens of Southampton Township; places of public entertainment amusement and recreation, the Township of Southampton enacts this Ordinance to minimize and control the adverse effects of adult entertainment businesses and thereby protect the health, safety and welfare of its citizens; protect the citizens [sic] property values and character of surrounding neighborhoods; and deter the spread of blight.

Ordinance 97–02 § 1.A.

To further this purpose, the Ordinance provides a licensing procedure for sexually oriented businesses and those who seek to own, operate or work for them. These persons must complete an application, which includes a criminal background check for sex related crimes, (Ord. § 4) and obtain a license from the township. Ord. § 3. Further, the business itself may not be located within the same building as, or within one thousand (1,000) feet of, any other sexually oriented business. Ord. § 11. A party who violates the Ordinance is subject to fines in a civil enforcement proceeding before a District Justice. Ord. § 16.

Plaintiff, doing business as The Lion's Den, leases real property in Southampton Township whereat it opened a retail store for the sale of sexually oriented books, magazines/periodicals, and novelties on October 4, 1999. At the time, plaintiff was not aware of the existence of the Ordinance and did not apply for the appropriate licensing. Plaintiff stopped doing business when it learned of the Ordinance and commenced the instant action seeking to have the Ordinance deemed unconstitutional.

On October 15, 1999, the plaintiff filed a motion for a temporary restraining order (TRO). This court denied the TRO, finding that the plaintiff had not established the requisite element of irreparable harm. At that time, the preliminary injunction hearing date and briefing schedule were set.

## 2. Jurisdiction/Standing

■ We have subject matter jurisdiction over plaintiff's suit under 28 U.S.C. § 1331 as it arises under the Constitution and laws of the United States. We also find it appropriate to comment on standing. While it is not raised in any of the briefs, the parties commented at the trial, however briefly, on this issue. Further, as a federal court, we are under an independent obligation to determine jurisdiction, and standing "is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) *quoting Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

■ With regard to standing, the law provides as follows:

In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license. *Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). The plaintiff is challenging the ordinance as a violation of freedom of expression. Accordingly, the plaintiff has standing to challenge the instant ordinance even though it has not applied for a license. However, as plaintiff's business involves the sale of sexually oriented videotapes, magazines and novelties, we shall address the ordinance only as it applies to these subjects.[1]

## 3. Standard of Review

The law provides that "[b]efore or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." F.R.C.P. No. 65. We have decided to consolidate the preliminary injunction hearing with the trial on the merits and notified the parties of our decision prior to the hearing.

■ The plaintiff seeks a permanent injunction enjoining the township from enforcing its ordinances regarding adult book stores. "In deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof). If so, the court must then consider the appropriate remedy." *CIBA–GEIGY Corp. v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d 844, 850 (3d Cir.1984). Bearing these standards in mind, we will now move on to the merits of the case.

## 4. Discussion including findings of fact and conclusions of law

### A. Power of the Township

■ As an initial matter, we must determine whether the township has the power

---

1. In addition to adult bookstores, novelty stores or video stores, the ordinance applies to adult cabarets, adult motion picture theaters, adult theaters, escort agencies, nude model studios and sexual encounter centers. We express no opinion as to the constitutionality of the ordinance as it is applied to the latter businesses.

to license sexually oriented businesses. Plaintiff argues that the township does not have the power to license such businesses because the township only has the powers explicitly granted by state statute, and the authority to license sexually oriented businesses is not explicitly provided. Defendant claims that the power to license the businesses in question can be found in the Second Class Township Code (hereinafter "SCTC"). We are in agreement with the defendant.

■ Second class townships are limited in power , to those powers expressly or implicitly granted to it by the legislature. *Hunlock Township v. Hunlock Sand and Gravel Corp.*, 601 A.2d 1305, 1307 (Pa. Cmwlth.1992). We must determine, therefore, whether the SCTC either expressly or implicitly grants the defendant the power to license sexually oriented businesses.

We find several sections of the SCTC to be relevant. First, second class townships are granted the power to inspect and regulate the use and occupancy of all buildings. 53 P.S. § 66517 (Purdon's 1999). Townships are also empowered to enact ordinances to secure the safety of persons and property within the township 53 P.S. § 66527 (Purdon's 1999). The last relevant section of the code provides that townships have the general power to adopt ordinances necessary for the proper management, care and control of the township and its finances and the maintenance of peace, good government, health and welfare of the township and its citizens, trade commerce and manufacturers. 53 P.S. § 66506 (Purdon's 1999).

Although not explicitly set forth, Pennsylvania courts have implied from the general police power of section 66506 the authority to do the following: regulate cable television, *Board of Supervisors of New Britain Twp. v. Bucks County Cablevision*, 492 A.2d 461, 465 (Pa.Commw.1985); enact an ordinance requiring that police

officers reside in the township, *Jeske v. Upper Yoder Twp.*, 403 A.2d 1010 (Pa. Cmwlth.1979); and designate a primary provider of emergency medical services, *Mars Emergency Medical Services, Inc. v. Township of Adams*, 740 A.2d 193 (Pa. 1999). In finding that townships have such powers, although not explicitly set forth in the statute, the courts in the above cases examined whether the laws are in the furtherance of the common good and will serve the public.

In the instant case, the purpose of the ordinance is to address the secondary effects of adult entertainment businesses. Ord. § 1(A). Evidence presented at the trial in the form of stipulated testimony reveals that secondary adverse effects include increased crime, decreased property values and public health concerns. Notes of Testimony of Preliminary Injunction Hearing, 11/22/99, p. 74. (Hereinafter "N.T."). We conclude that an ordinance aimed at alleviating these effects is in the common good because it applies to the health, welfare and safety of the citizens. Therefore, the power to enact the ordinance is implicit in the above-cited statutory sections.

### B. Constitutional Challenge to the Ordinance

■ While we find that the defendant does have the power to regulate enterprises such as the plaintiff's, its power is not limitless. The law still must comport with the demands of the United States Constitution. Adult bookstores such as the plaintiff seeks to operate are protected by the right to freedom of speech under the First Amendment. *Smith v. California*, 361 U.S. 147, 150, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).[2] A licensing scheme directed toward such establishments is a prior restraint on First Amendment speech. See *FW/PBS v. City of Dallas*, 493 U.S. 215,

---

**2.** Defendant does not argue that the Ordinance is aimed at businesses dealing in obscenity which is unprotected by the First

Amendment. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). The Supreme Court has held that while prior restraints are not *per se* unconstitutional, there is a a heavy presumption against their constitutional validity. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

■ Two evils have been identified that will not be tolerated in prior restraint schemes. First, the scheme cannot place unbridled discretion in the hands of a government official or agency, *Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), and second, it cannot fail to place limits on the time within which the decision maker must issue the license. *Freedman, supra,* at 58–60, 85 S.Ct. 734. To be constitutional, laws regarding prior restraints must have sufficient procedural safeguards to combat these problems. These safeguards include: 1) the licensor must decide whether to issue the license within a specified and reasonable time period during which the status quo is maintained; and 2) a prompt judicial review of that determination must be available. *Id. FW/PBS,* at 228, 110 S.Ct. 596.

The *Freedman* opinion included a third safeguard—that the would-be censor bear both the burden of going to court and the burden of proof in court. *Id.* at 58–59, 85 S.Ct. 734. In a more recent Supreme Court case dealing with a licensing ordinance similar to the one presently before the court, the Supreme Court could not reach a consensus on whether all three procedural safeguards must be available in situations involving licensing. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). A majority of the Justices, (O'Connor, Stevens, Kennedy, Brennan, Marshall and Black-

mun) however, agreed that the first two requirements must be met.[3] *Id.* at 228, 238, 110 S.Ct. 596. Therefore, we shall address only the first two criteria.

Plaintiff alleges that the first two requirements are not met. The restraint is not brief because an applicant must wait for inspection from building and fire inspectors, and the inspectors cannot be forced to act. Secondly, plaintiff contends that a prompt judicial determination is not available. We shall address each issue separately.

### 1. Time limits

■ Plaintiff contends that no time frame is set forth in the ordinance for the approval or denial of an application. The ordinance provides as follows: "Within thirty (30) days after receipt of a complete adult entertainment business application, the Township shall approve or deny the issuance of a license to an applicant." Ord. § 4(C). A license may be denied where the fire marshal and building official have not approved the premises. Ord. § 4(C)6. The ordinance further provides that the fire marshal and building inspector "shall complete their certification that the premises is in compliance or not in compliance within twenty (20) days of receipt of the application by the Township." Ord. § 4(E). Plaintiff claims that this time limit is illusory as the township has no authority to compel the fire marshal and building inspector to perform their inspections within the relevant time period. Therefore, the application could lay dormant for an indefinite period of time. Defendant alleges that the time limit is not illusory because state law provides that if the inspections are not made within thirty days, they are deemed approved. After a

**3.** Justices White and Rehnquist found that the *Freedman* requirements did not apply at all to a licensing scheme where the ordinance is not aimed at which particular materials may be sold or offered for sale and therefore, it was distinguishable from *Freedman.* (In *Freed-*

*man,* a board viewed all adult movies to determine which were suitable for public viewing.) Justice Scalia did not address *Freedman* at all and concluded that since the businesses could be prohibited that they could be licensed.

careful consideration, we are in agreement with the plaintiff.

In *FW/PBS*, the Supreme Court dealt with a similar issue. In that case, an ordinance licensing sexually oriented businesses required that the premises of such an establishment be approved by the health department, fire department and building official as being in compliance with applicable laws and ordinances. The ordinance did not set a limit within which the inspection had to occur and provided no means by which an applicant could ensure that the business would be inspected within the thirty-day time period within which the license was to purportedly be denied or approved. *FW/PBS, supra,* at 227, 110 S.Ct. 596. The law was deemed unconstitutional. Justice O'Connor noted that "[a] scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech." *Id.*

We must determine, therefore, whether the ordinance sets reasonable time limits or allows for the indefinite postponement of the issuance of a license. As noted above, the license cannot issue until the building inspector and fire marshal conclude their inspections. Unlike *FW/PBS*, however, the ordinance provides that the inspections must take place within twenty days from when the application is filed with the township. Plaintiff contends, however, that the defendant has no authority to oblige the building inspector and fire marshal to act. Defendant claims that if no approval is provided within thirty (30) days, the applications are deemed approved under Senate Bill No. 647. We are unconvinced. Nowhere in the record is it established that the municipality has adopted an ordinance for the administration and enforcement of the act. See Chapter 5, Senate Bill No. 647 Session of 1999. Moreover, the act applies to build-

ing construction and is not necessarily relevant where an entity is attempting to get a license for a particular use.

Defendant further points to 53 P.S. 4104 (Purdon's 1999) which provides that applications for building permits will be deemed approved if not acted upon within ninety (90) days. The law applies to municipalities that regulate the construction, erection, maintenance, operation or repair of buildings, structures or devices by means of an ordinance requiring the filing of an application, the payment of a fee and the issuance of a permit. 53 P.S. 4104(a) (Purdon's 1999). From the record before us, we cannot find that this section of the law is applicable. It deals with building permits. The ordinance at issue involves a "certificate" from the building official. *See* Ord. 4(E). We cannot determine from the Ordinance whether the "certificate" is really a permit which is issued upon application and payment of a fee so as to be covered under section 4104. In fact, a reading of the Ordinance leads us to conclude that the type of certificate mentioned in the law is not the type of permit controlled by section 4104. Moreover, what is at issue in this case is the use of a building, not regulations regarding the building of a structure. It seems that when the time comes to apply for a license the applicant would have already applied for and obtained the relevant permits.[4] Accordingly, we are unconvinced that section 4104 provides support for defendant's contention that sufficient time limits are in effect.

In addition to an inspection by the building inspector, the ordinance requires that the fire marshal perform an inspection. This requirement is a bit confusing because, according to the testimony adduced at the hearing, the town has no fire marshal. Instead, the defendant relies on the state Department of Labor and Industry for the fire inspection. N.T. 59.[5] Douglas

---

**4.** The parties were in disagreement at the time of the hearing as to whether the certificate in question was actually the building

permit which had already been obtained in the instant case. See N.T. 96–97, 102.

**5.** Nothing in the Ordinance puts an applicant on notice of this substitution.

Shields of the township board of supervisors admitted that the town had no authority to order the state agency to complete its work within any particular time frame. N.T. at 60.

Accordingly, we find that the time limits imposed on the inspectors is illusory and this case is akin to the Supreme Court precedent of *FW/PBS, supra*, and the procedural safeguard of having the license issue or be denied within a short time is not provided by the ordinance. Hence, the ordinance is unconstitutional.

## 2. Judicial review

■ Secondly, the plaintiff contends that the law does not provide for prompt judicial review as required by *Freedman* and *FW/PBS*. The Ordinance addresses judicial review as follows: "After denial of an application, or denial of a renewal of an application, or suspension or revocation of any license, the applicant or licensee may seek prompt judicial review of such administrative action in any court of competent jurisdiction. The administrative act shall be promptly reviewed by the Court." Ord. at § 9(D). The plaintiff alleges that no court of competent jurisdiction exists to which an aggrieved party can appeal. Defendant maintains that pursuant to Pennsylvania law, the courts of common pleas can hear the appeal. After a thorough review of the matter, we are in agreement with the plaintiff.

Pennsylvania law provides that an adjudication of a Commonwealth agency may be appealed by a person aggrieved. 2 Pa.C.S.A. § 702 (Purdon's 1999). Defendant claims that this rule applies to the license at issue. We disagree. The right to appeal a decision of a Commonwealth agency is determined by whether the appeal is an "adjudication". An "adjudication" exists where an agency's decision leaves a complainant with no other forum in which to assert his rights, privileges or immunities. *Turner v. Pennsylvania Public Utility Comm'n*, 683 A.2d 942, 946 (Pa. Commw.1996). However, to be an "adjudication" all parties must have been afforded reasonable notice of the hearing and an opportunity to be heard prior to the initial decision. 2 Pa.C.S.A. § 553 (Purdon's 1999); *O'Brien v. Township of Ralpho*, 646 A.2d 663, 665 (Pa.Commw.1994); *Baby Neal v. Casey*, 821 F.Supp. 320 (E.D.Pa. 1993) vacated in part and remanded 43 F.3d 48 (3rd Cir.1994) (Under Pennsylvania law, appeal may be taken where an agency's adjudication is "quasi-judicial" and includes notice, opportunity to be heard and results in findings necessary to resolve issues raised by evidence and reasons for such findings.)

In the instant case, a denial of a license is not an adjudication. The Ordinance fails to set up a hearing where the applicant is provided an opportunity to be heard. Since the decision is not an adjudication, it cannot be appealed pursuant to 2 Pa. C.S.A. 702 (Purdon's 1999). The jurisdiction of the courts of common pleas are further set forth in 42 Pa.C.S.A. § 933 (Purdon's 1999). This section merely sets forth a laundry list of situations where the common pleas courts have jurisdiction of appeals from final orders of government agencies. A review of this section reveals that it does not grant jurisdiction with regard to the present matter.[6]

Defendant further submits that a party who is denied a license can seek judicial review through a mandamus action. Pa. C.R.P. No. 1091 *et seq.* We are unconvinced. The law allows parties to bring a mandamus action where they have a clear right to a permit and it is denied or revoked. *Lindy Homes, Inc. v. Sabatini*, 453 A.2d 972, 973 (Pa.1982). These are instances in which the issuing government

6. Section 933 provides jurisdiction for review of the decisions of the following government agencies: the Department of Health; the Department of Transportation; Worker's Compensation Appeal Board; the Pennsylvania Liquor Control Board; the Department of Revenue; the Pennsylvania Labor Relations Board, as well as matters involving the Pennsylvania Election Code and the Health Care Malpractice Act.

official has no discretion and the issuance of the permit is merely a ministerial act. *Id.* Under the licensing scheme at issue, however, the township has great discretion, for example, a license may be denied where an applicant has failed to provide information "reasonably necessary" for issuance of the license. Ord. § 4(3). The township official with the power to grant or deny the licenses admitted that he even has the discretion to decide whether the application is complete or not. N.T. at 25. Due to the manner in which the Ordinance is drafted, an applicant never has a clear claim of right to a license so as to make it a proper subject matter for a writ of mandamus.

Under the Ordinance, the party is allowed to appeal the denial of a license to a "court of competent jurisdiction". Nowhere in the law is a court granted jurisdiction to hear such cases. Therefore, we find that the second procedural safeguard needed for the licensing scheme to be constitutional is missing. That is, it does not provide for prompt judicial review. Therefore our review convinces us that Ordinance 97–02 is unconstitutional for failing to ensure prompt judicial review of a denial of a license.

### Ordinance 83–03

■ Part of the Ordinance, which we have found to be unconstitutional, acts as a repealer of any other inconsistent laws enacted by the township. Ord. § 18. One of the "inconsistent" laws, Ordinance 83–03, imposed a complete ban on adult bookstores within the Township. Plaintiff seeks to have Ordinance 83–03 deemed unconstitutional in order that it will not be reinstated when the defendant is enjoined from enforcing the present ordinance. Time, place and manner restrictions on First Amendment activities must serve a significant state interest and leave open adequate alternative channels of communication in order to be constitutional. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). Ordinance 83–03 violates this requirement of the law because it totally excludes adult bookstores and their constitutionally protected speech. No adequate alternative channel of communication is provided. Therefore, we find that Ordinance 83–03 is unconstitutional to the extent that it prohibits adult bookstores.[7]

### Conclusion

We find that the licensing scheme set forth in defendant's Ordinance is an unconstitutional infringement on the right to freedom of speech of the First Amendment to the Constitution. The law does not contain the procedural safeguards necessary for it to be constitutional. More particularly, the ordinance does not guarantee that the license will be denied or approved within a specific short period of time and prompt judicial review of a denial is not secured by the law.[8] Accordingly, we conclude that judgment in favor of the plaintiff is warranted. An appropriate order follows.

### VERDICT

**AND NOW**, to wit, this 28th day of December 1999 after careful consideration of the evidence presented at the trial and

---

7. Defendant apparently does not contest this finding as it did not brief the issue of the constitutionality of Ordinance 83–03.

8. Plaintiff further argues that the ordinance is unconstitutional because it imposes an impermissible prior restraint against the dissemination of protected speech and denies plaintiff equal protection of the laws in violation of the First and Fourteenth Amendments to the United States Constitution. As we find that the ordinance is unconstitutional because it fails to provide the procedural safeguards required by Supreme Court precedent, we find it unnecessary to address these other arguments. *See, FW/PBS, supra,* at 222, 110 S.Ct. 596 (Where the court finds that a licensing scheme lacks adequate procedural safeguards, it need not reach the issue of whether the ordinance is proper, content neutral time, place, and manner restriction aimed at secondary effects arising out of the sexually oriented businesses.)

the arguments propounded by each side, we find as follows:

1) Southampton Township Ord. 97–02 and Ord. 83–3 impose an unconstitutional restriction on First Amendment freedom of speech to the extent set forth in the accompanying memorandum; and

2) The defendant, its officers, agents, servants, attorneys and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise are hereby permanently **ENJOINED** from enforcing Ord. 97–02 and Ord. 83–3 against plaintiff, its officers, agents and employees to the extent set forth in the accompanying memorandum.